[No. B093653. Second Dist., Div. Two. July 26, 1996.]

NARENDRA DESAI, Plaintiff and Appellant, v.
FARMERS INSURANCE EXCHANGE et al., Defendants and
Respondents.

COUNSEL

Harold E. Griffin for Plaintiff and Appellant.

Cooper, Kardaras & Scharf, Gerald G. Knapton and Linda Chalison for Defendants and Respondents.

OPINION

**BOREN, P. J.**—An insured sued his real property insurer and insurance agent for breach of contract and negligence, claiming that the defendants failed and refused to provide him with the 100 percent replacement cost coverage he had requested and which the agent assured him he was receiving. On demurrer, the trial court concluded that the insured could not state a cause of action against his insurer because the policy limits were less than the cost of replacing structures destroyed by an earthquake and fire. We conclude that the reasonable expectations of the insured would be that he was completely covered for the replacement cost of the structures, regardless of the policy limits. Accordingly, we reverse the court's order of dismissal in favor of the insurer.

## ALLEGATIONS

Narendra Desai purchased real property in Santa Monica in 1991. To safeguard his investment, Desai sought to purchase earthquake, fire and hazard insurance. Desai informed an insurance vendor, Carol Sacramone Insurance Agency, that he wanted 100 percent coverage for the cost of repairing or replacing improvements to the property, including any increases for inflation. Sacramone told Desai that Farmers Insurance Group offered the type of insurance Desai wanted, and orally represented that the policy provided "100% coverage for the costs of repairs and/or replacement of the improvements to the property including any and all increases in costs of repair or rebuilding in the event of a loss."

In reliance upon the representations of Sacramone and based on the understanding that the policy provided 100 percent replacement coverage in the event of a loss, Desai purchased a Farmers insurance policy through Sacramone, effective November 4, 1991. Before the policy issued, Sacramone personally inspected the property to determine the amount of coverage needed to meet and fulfill Desai's stated requirements. The policy was renewed annually through February 22, 1994.

On January 17, 1994, two of the structures on Desai's land were completely destroyed by an earthquake. On February 22, 1994, a third structure damaged in the earthquake was destroyed by fire. The total loss sustained by Desai was $546,757. Desai made a claim of loss on his policy with Farmers. Farmers agreed to pay Desai $158,734 on the grounds that this sum was the limit of its liability for the loss.

Desai instituted this lawsuit on January 17, 1995. In his first amended complaint, he asserts a cause of action for negligence against Sacramone for advising him to purchase insurance from Farmers when the coverage for which he paid was not what he told Sacramone he needed. As a consequence of this negligence, Desai was unable to rebuild the structures which were destroyed. Desai also makes a respondeat superior claim against Farmers for Sacramone's negligence. Finally, Desai alleges a cause of action against Farmers for breach of contract.

## DISCUSSION

### 1. *Appealability*

■ Desai has appealed from the trial court's April 13, 1995, order sustaining Farmers' demurrers without leave to amend. The order sustaining the demurrers is not an appealable order. (*Lavine* v. *Jessup* (1957) 48 Cal.2d 611, 614 [311 P.2d 8].)

The record on appeal also contains an order of dismissal as to Farmers pursuant to Code of Civil Procedure section 581, subdivision (f)(1). The dismissal operates as a final judgment with respect to Farmers, and is separately appealable. (*Seidner* v. *1551 Greenfield Owners Assn.* (1980) 108 Cal.App.3d 895, 901 [166 Cal.Rptr. 803].) In the interests of justice and economy, we shall treat the notice of appeal as incorporating the order of dismissal.

### 2. *Standard of Review*

■ An appellate court reviews a ruling sustaining a demurrer without leave to amend de novo, exercising independent judgment on whether a cause of action has been stated as a matter of law. (*Hoffman* v. *State Farm Fire & Casualty Co.* (1993) 16 Cal.App.4th 184, 189 [19 Cal.Rptr.2d 809].) All facts properly pleaded are deemed admitted, and we are not concerned with a plaintiff's possible inability to prove the claims made in the complaint at trial. (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

### 3. *Breach of Contract Claim*

In 1994, the year Desai sustained his insured loss, his annual statement from Farmers showed that the "Amount of Insurance" was $150,000 for loss or damage to structures (from fire, for example) and $150,000 for earthquake loss or damage to structures. Farmers relies on general policy conditions stating that it is only responsible for (1) "the replacement cost of . . . the building," or (2) "the amount actually and necessarily spent to repair or replace the damaged building," or (3) "the limit of liability" under the policy, *whichever is smaller.* The smallest amount was the $150,000 policy limit, which is what Farmers paid.

■ Desai contends that the policy is not nearly so clear-cut as Farmers suggests. In support of his contention, Desai points to a policy provision guaranteeing payment of replacement costs. The policy contains a "Value Protection Clause" which provides: "We [Farmers] may increase the limits of insurance to reflect changes in costs of construction and personal property values. Any such increase will be made on the renewal date of this policy or on the anniversary date of 3-year policies paid annually. If a Replacement Cost provision forms a part of this policy, we guarantee that the limits of insurance meet the replacement cost requirements."

Elsewhere within the policy or accompanying literature, Farmers announces the following to its policyholders: "Your policy contains a very important feature called Value Protection. Value Protection provides *automatic protection against inflation* so that the coverage amounts are increased as the costs of replacing your home or Personal Property increase. Value Protection *guarantees to meet all minimum insurance-to-replacement cost requirements* if any are present in your policy. Subject to the amount of your policy limits and all policy provisions, depreciation will not be applied to most building losses . . . . The enclosed premium notice includes the increased amounts of insurance and premium, based on the applicable indexes for your property and your area. If there has been no increase in amounts of insurance this is because the applicable indexes did not show an upward adjustment for this period." (Italics added.)

For the reassuring guarantees and "extended coverage" of the Value Protection plan, Desai alleges that he paid an extra $108 annually in premiums.

■ "We begin with established principles applicable to the interpretation of insurance policies. Words used in an insurance policy are to be interpreted according to the plain meaning which a layman would ordinarily attach to

them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.] [¶] On the other hand, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draftsman controls the language of the policy." (*Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800, 807-808 [180 Cal.Rptr. 628, 640 P.2d 764].) The insurer-draftsman will not be rescued from the consequences of the imprecise terminology used in the insurance contract, especially where it would defeat the reasonable expectations of the insured. (*Id.* at p. 811.)

Farmers would like for the policy limits language of the contract to be read in isolation, without reference to other provisions. This is not the correct way to construe insurance policies, however. ■ "The principles governing interpretation of insurance contracts are familiar and well settled. . . . Each clause of the contract must be considered with reference to every other relevant clause and the clauses construed together in order to ascertain the intent of the parties. Similarly, in construing the meaning of a specific policy provision we do not view the provision in isolation but in the context of other relevant policy provisions. If the policy language is clear and explicit, it governs. If, on the other hand, the provision is susceptible to two or more reasonable constructions, it must be construed in accordance with the objectively reasonable expectations of the insured. Finally, if applying the foregoing rules does not eliminate or resolve any alleged ambiguity, the ambiguity is resolved against the insurer in favor of liability under the policy." (*A.B.S. Clothing Collection, Inc.* v. *Home Ins. Co.* (1995) 34 Cal.App.4th 1470, 1478-1479 [41 Cal.Rptr.2d 166].)

■ The "Value Protection Clause" in Desai's policy seriously undermines the purported liability cap stated elsewhere in the policy. Farmers *guarantees* to meet replacement cost requirements, and promises *automatic protection* by increasing coverage levels as the cost of replacing the insured property increases.[1] A reasonable policyholder could readily construe that to mean that he or she need not demand increased coverage each year because Farmers would "automatically" take increased costs into account in fixing

---

[1] To the extent that some of this language is contained in a premium renewal notice sent to Desai by Farmers, to induce policyholders like Desai to renew their policies, we shall treat it as an affirmative representation by the insurer to its insured regarding the scope and meaning of the policy.

the coverage and premium. Increased coverage is hardly "automatic" if the insured has to research the matter himself, then demand changes in the policy. Moreover, the "guarantee" to meet replacement cost requirements makes it appear that Farmers is willing to gamble that it correctly fixed the cost of replacing the property when it drew up the contract and set the premium amount. Desai alleges that he paid over $100 per year for this guarantee. The guarantee is worthless, however, if it turns out that the estimated cost of replacement stated in the policy is dead wrong, either because the insurance agent who inspected the property miscalculated what it would cost to rebuild, or because the insurer neglected to increase automatically the policy limits each year to keep up with inflation. We doubt that the reasonable expectation of the insured was to pay over $100 per year extra for a worthless guarantee. Rather, the insured would expect to pay one premium for a policy that merely had a $150,000 policy limit, and a higher premium for a policy that *guaranteed* the policy limit would cover the insured's replacement cost.

In short, the $150,000 coverage amount is completely incompatible with other policy language guaranteeing replacement cost and providing automatic protection with increased coverage. If Farmers wished to pay only $150,000, it should not have promised automatic inflation protection or guaranteed replacement coverage. It is plain that Farmers grossly underestimated the replacement cost of Desai's property, but that is Farmer's problem, not Desai's. Reading the policy language as a whole, and interpreting it in favor of the insured as we must where there is a patent ambiguity of this sort, we conclude that an objectively reasonable insured layperson would believe the policy guaranteed replacement coverage, regardless of what the purported policy limits were. Accordingly, the trial court erred in construing the policy in favor of the insurer and in sustaining the demurrer to this cause of action.

4. *Respondeat Superior Liability*

Desai alleges that Sacramone is an agent for Farmers and acted within the course and scope of that agency and with the permission and consent of Farmers when negligently selling inadequate insurance to him. Desai argues that Farmers is vicariously liable for Sacramone's negligence because of their agency relationship.

An insurer, as a principal, may be vicariously liable for the torts of its agent if the insurer directed or authorized the agent to perform the tortious acts, or if it ratifies acts it did not originally authorize. (*Shultz Steel*

*Co.* v. *Hartford Accident Indemnity Co.* (1986) 187 Cal.App.3d 513, 518-519 [231 Cal.Rptr. 715].) Layered atop the principal/agent relationship of the insurer to its agent is the insurer's fiduciary duty to conduct itself with the utmost good faith for the benefit of its insured. (*Id.* at p. 519.)

Farmers relies on four cases which it claims establish that it cannot be held liable for Sacramone's negligence: *Ahern* v. *Dillenback* (1991) 1 Cal.App.4th 36, 42-43 [1 Cal.Rptr.2d 339]; *Schultz Steel Co.* v. *Hartford Accident Indemnity Co., supra,* 187 Cal.App.3d 513, 522-523 (public policy militates against imposing duty on insurer to advise of availability of coverage *beyond* what was requested by insured); *Gibson* v. *Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441, 448, 452 [208 Cal.Rptr. 511] (insurer who made no representation, promise, guarantee or warranty regarding the nature and extent of the coverage it offered was not liable for failing to advise insured to purchase uninsured motorist coverage which the insured never requested); and *Jones* v. *Grewe* (1987) 189 Cal.App.3d 950, 956 [234 Cal.Rptr. 717].

None of the cited cases is on point. In each instance, the insured was suing its insurer for failing to (1) *recommend additional* coverage or (2) *spontaneously procure* unrequested additional coverage for its insured or (3) *advise* that additional coverage was *available.* That is not the case here. Desai is suing because the insurer (through its agent) negligently represented that the policy in fact provided the 100 percent replacement cost coverage that Desai demanded from his insurance before he ever purchased the policy from Farmers.

This is not a situation wherein an insured belatedly realized—after an accident occurred and a claim was made and denied—that he or she should have had more or different coverage. Rather, Desai demanded a particular level of coverage at the outset, before he agreed to purchase a policy. It was then represented to him that he was receiving the demanded level of coverage from Farmers, and only afterwards did he discover the coverage he purchased was not what he had demanded nor what the insurer and its agent warranted it was. This is not a "failure to recommend more coverage" case; it is a "failure to deliver the agreed-upon coverage" case.

A "failure to deliver the agreed-upon coverage" case is actionable, unlike the "failure to recommend" cases cited by Farmers. An insurance agent has an "obligation to use reasonable care, diligence, and judgment in procuring insurance requested by an insured." (*Jones* v. *Grewe, supra,* 189 Cal.App.3d at p. 954; *Kurtz, Richards, Wilson & Co.* v. *Insurance Communicators Marketing Corp.* (1993) 12 Cal.App.4th 1249, 1257 [16 Cal.Rptr.2d

259].) A broker's failure to obtain the type of insurance requested by an insured may constitute actionable negligence and the proximate cause of injury. (*Nowlon* v. *Koram Ins. Center, Inc.* (1991) 1 Cal.App.4th 1437, 1447 [2 Cal.Rptr.2d 683].) Moreover, if the agent fails to exercise reasonable care in procuring the type of insurance that the insured demanded and bargained for, the cases hold that the insurer may be liable under theories of ratification and ostensible authority.

For example, where an insurance agent negligently failed to name the insured's lessor as an additional insured on the policy, so that the lessor was exposed to liability when someone was injured on the insured premises, a claim which survived demurrer was stated against the insurance carrier based on the negligence of its agent. (*Jackson* v. *Aetna Life & Casualty Co.* (1979) 93 Cal.App.3d 838, 840, 848 [155 Cal.Rptr. 905].) The court observed that the insurance carrier—as a "quasi-public" entity—may be held vicariously liable for failing to fulfill its basic obligation to provide the insurance required by the policy's intended beneficiary and demanded from the agent. (*Id.* at pp. 846-847.)

As a further example, an insured instructed an authorized agent of Fireman's Fund Insurance Company to procure $15,000 in personal property insurance in *Lippert* v. *Bailey* (1966) 241 Cal.App.2d 376 [50 Cal.Rptr. 478]. After a fire on the insured premises, the insured discovered that the agent had obtained only $5,000 in insurance. The insurance carrier maintained that it was only liable for the face amount of the policy as written for $5,000, and the insured sued. (*Id.* at p. 379.) The appellate court disagreed with the insurer, noting that ". . . the plaintiffs bargained for and entered into a contract of fire insurance for an adequate consideration with Fireman's Fund Insurance Company in exchange for certain guaranties of insurance protection in specified amounts. The defendants herein have failed to obtain the specified amounts of insurance protection from the company which had been bargained for. These factors would indicate a primary right of the plaintiffs in the insurance contract and a breach of duty pertaining to that right in failing to provide the bargained for coverage." (*Id.* at p. 381.) Though the carrier settled with the plaintiffs prior to trial, the court stated that the negligence of the agent was attributable to the insurer and that a legal remedy could have been properly pursued against the insurer. (*Id.* at pp. 382-384.)

In a case from this division reciting facts remarkably similar to those alleged here, this court concluded that the insured's lawsuit survived demurrer where it was claimed that the insurer—through its agent—failed to insure

adequately the insured's house against loss. (*Free* v. *Republic Ins. Co.* (1992) 8 Cal.App.4th 1726 [11 Cal.Rptr.2d 296].) The insured requested coverage adequate to rebuild his home. He was informed by the defendant insurance company's agent that the policy would cover reconstruction. The insured's home was destroyed by fire, at which point he discovered that the policy limit was less than it would cost to replace his home. (*Id.* at p. 1729.) This court observed that the insured sought to be protected against a very specific eventuality: the destruction of his home. The defendants assured him that his coverage was sufficient for this purpose, which created a viable claim of negligence when it later became evident that the policy limit was less than it would cost to rebuild. (*Id.* at p. 1730.) That is precisely what is alleged in the case at bar.

In light of the authorities we have cited, the trial court erred in finding that Desai had no actionable claim against Farmers for Sacramone's negligence.

## DISPOSITION

The judgment (order of dismissal) in favor of Farmers Insurance Company is reversed. Desai is entitled to recover his costs on appeal from Farmers.

Fukuto, J., and Zebrowski, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 20, 1996.