Filed 7/11/14  Crocker v. The Dresden Restaurant CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MATHEW CROCKER,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>THE DRESDEN RESTAURANT et al.,<br><br>    Defendants and Respondents. | B248521<br><br>(Los Angeles County<br>Super. Ct. No. BC478249) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Terry A. Green, Judge.  Affirmed.

Schimmel & Parks, Alan I. Schimmel, Michael W. Parks, Stacey R. Cutting for Plaintiff and Appellant.

Law Office of Priscilla Slocum, Priscilla Slocum; Early, Maslach & O'Shea, James Randall for Defendants and Respondents.

_____

Plaintiff was stabbed near a bar and restaurant where he had been celebrating a friend's birthday. We find that the drinking establishment and related defendants did not have a duty to prevent the attack because violence was unforeseeable. Accordingly, we affirm the judgment entered after the trial court sustained a demurrer without leave to amend.

## BACKGROUND

**Allegations**

Plaintiff Matthew Crocker filed suit in February 2012 after suffering injuries in August 2011. His second amended complaint (SAC), filed in December 2012, was brought against defendants (i) The Dresden Restaurant (the Dresden), "dba for" The Ritto, Inc., a restaurant, lounge, and bar located at 1760 North Vermont Avenue in Los Angeles; (ii) James Ferraro, an individual and trustee of (iii) the Ferraro Trust, both owners of the Dresden; (iv) F&F Properties, a company owned and operated by Ferraro and the owner of property next to the Dresden; (v) Richard Brewer, a tenant of Ferraro's and part-owner of a nearby clothing store; and (vi) Miho Ikeda, also a tenant of Ferraro's and part-owner of the clothing store. Defendants i through iv are referred to collectively herein as the Ferraro defendants.

Plaintiff alleged that Ferraro had been acquainted with Ikeda and Brewer for approximately 10 years, and had rented out office space to them at 4655 Kingswell Avenue for approximately four to five years. The Kingswell building was contiguous to the Dresden; the back door of the Dresden was about 75 to 100 feet away from the back entrance to the Kingswell building. The main entrance to the Kingswell building was not locked on a regular basis and the building had been previously broken into and vandalized. The door at the main entrance was a self-locking steel security door, but it was defective and could swing open without the handle being turned. Ferraro had given keys to Ikeda and Brewer so that they could lock the door, but Ikeda and Brewer complained to Ferraro that the door would not lock or work properly. The Kingswell building was maintained by Ferraro in a dilapidated condition.

2

In the late part of 2010, police began receiving complaints regarding patrons of the bars and nightclubs in the immediate vicinity of the Dresden. Neighborhood residents complained of excessive noise, public intoxication, and "party" buses that offloaded 50-70 revelers at a time. Bar patrons had committed vandalism and battery. According to the SAC, the Ferraro defendants were aware of this problematic activity but failed to take any steps to prevent it, and instead encouraged it by allowing individuals to park in the Dresden parking lot when boarding party buses. The Ferraro defendants also knew that their tenant Brewer was severely disturbed by the party buses, and had taken to patrolling the streets to try to rid the area of nightclubs and intoxicated partiers. The SAC further alleged that plaintiff was informed and believed that the Ferraro defendants were aware that Brewer was dangerous and posed a threat to the Dresden's patrons.

On the evening of August 13, 2011, plaintiff attended the birthday party of a friend, a Mr. De Ocampo. De Ocampo had chartered two party buses for the event and invited approximately 90 friends, who were to park in the Dresden parking lot and attend a reception at the Dresden prior to boarding the buses. The Dresden set up a check-in table and gave attendees wrist bands allowing them to drink alcohol at the Dresden and on the buses. Following the reception, the guests boarded the buses and celebrated De Ocampo's birthday at a bar in Hollywood. The buses returned to the Dresden around midnight and offloaded the passengers.

After the guests had exited the buses, the bartenders on the buses began clearing trash. One bartender placed two bags of trash on the sidewalk by the bus, to later be thrown in the dumpster. As she was doing so, she was approached by Brewer, who confronted her about placing the trash bags on the sidewalk. After someone told Brewer to stop harassing the bartender, Ikeda ran toward the buses holding a cell phone equipped with a video camera. She pointed the camera at the bartender, De Ocampo, and others and said she "'got them'" and was going to "'put them on TMZ.'" In order to avoid further confrontation, De Ocampo took the trash bags and placed them in his car. He then went inside the Dresden to join friends for a drink.

3

Inside the Dresden, partygoers complained to employees that Brewer and Ikeda appeared to be intoxicated and had harassed and threatened them when they exited the party buses. Meanwhile, Ikeda and Brewer were fearful that De Ocampo and his friends would break into the Kingswell building. Ikeda called Ferraro twice to express fear and request help. The first call was not answered by Ferraro. Ferraro did answer her second call, and she told him that patrons of the Dresden were trying to break into the Kingswell building. After receiving the second call, Ferraro walked over to the Kingswell building's parking lot and met with Ikeda and Brewer. Ikeda pointed out plaintiff to Ferraro and told Ferraro that plaintiff was trying to break into the building. The SAC alleges that Ferraro did nothing to assure Brewer and Ikeda that the Dresden's patrons were harmless, and that he acted unconcerned about their fears.

Brewer and Ikeda then decided they needed "'evidence'" for the police in the event that the Dresden patrons broke into the Kingswell building so, strangely, Ikeda began tampering with and vandalizing De Ocampo's car. A partygoer noticed Ikeda doing this and told a valet attendant. The attendant was nonresponsive, so the partygoer went into the Dresden and told plaintiff and another guest that De Ocampo's car was being vandalized.

Plaintiff saw Ikeda running away from the car and up a flight of stairs at the Kingswell building. Plaintiff called out to Ikeda, asking what she was doing. Ikeda opened the door at the top of the steps with a key. Plaintiff, believing that Brewer and Ikeda had just vandalized his friend's car, followed Ikeda up the steps to a landing adjacent to the door. The door had a glass security window, and plaintiff could see Brewer and Ikeda behind the glass, their faces illuminated by the glow of their cell phones. Both Brewer and Ikeda were holding up their phones and filming plaintiff from inside the door. They told plaintiff that they were filming him and his friends and had called the police. Plaintiff pulled out his own cell phone and began filming Ikeda and Brewer. He said, "This is the state of America." He was then told by a friend to go, and he turned around to walk back down the stairs.

4

As plaintiff turned around, the security door suddenly opened. Ikeda rushed onto the landing and, without provocation or warning, pepper-sprayed plaintiff in the face and eyes. As plaintiff began to lose his balance on the staircase, Brewer, who was then standing on the landing, reached out and stabbed plaintiff two times—once near his right nipple, and the second time in his abdomen—also without provocation or warning. Brewer exclaimed, "Now you got stabbed, motherfucker!" The SAC alleges that plaintiff is informed and believes that the security door had swung open without anyone turning the handle.

The police arrived soon thereafter, followed by paramedics. Plaintiff had to undergo emergency surgery to repair a punctured abdomen muscle. He remained in the hospital for seven nights and has permanent scarring on his chest and abdomen.

**Demurrer**

The Ferraro defendants were sued for negligence, premises liability, and negligent infliction of emotional distress. They filed a demurrer to the SAC, arguing that plaintiff could not establish that the Ferraro defendants owed a duty to prevent the attack because the attack was unforeseeable.

The trial court agreed with the Ferraro defendants and sustained the demurrer to the SAC without leave to amend. Judgment was entered in favor of the Ferraro defendants. Plaintiff timely appealed.

**DISCUSSION**

**I. Standard of Review**

We review the ruling sustaining the demurrer de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115.) We give the complaint a reasonable interpretation, assuming that all properly pleaded material facts are true, but not assuming the truth of contentions, deductions, or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)

A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) As such, we are not concerned with the

5

difficulties plaintiff may have in proving the claims made in the complaint. (*Desai v. Farmers Ins. Exchange*, *supra*, 47 Cal.App.4th at p. 1115.) We are also unconcerned with the trial court's reasons for sustaining the demurrer, as it is the ruling, not the rationale, that is reviewable. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631; *Sackett v. Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2.)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

## II. <u>Duty</u>

### A. General principles

On appeal, plaintiff maintains that his negligence, premises liability, and negligent infliction of emotional distress claims were sufficiently pleaded. He contends that the Ferraro defendants had a duty to protect him, and that they breached this duty by failing to keep him from being exposed to Ikeda and Brewer or by otherwise failing to prevent the violent acts inflicted upon him. The Ferraro defendants argue that the violence was unforeseeable, and therefore they owed no duty to prevent it.

The elements of a cause of action for negligence are: legal duty, breach of the duty, causation, and damages. (*Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188, disapproved on other grounds in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, fn. 5; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, fn. 19.) Duty is an "essential element" of a negligence cause of action. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 984.) Plaintiff's claim for premises liability is also dependent on the existence of a legal duty. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1145; *Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 430.) And, while plaintiff's purported claim for negligent infliction of emotional distress is not a cause of action, to recover emotional distress damages plaintiff

6

would have to show that he was owed a duty. (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 205.)

The existence of duty is a question of law. (*Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 819.) Under California law, landowners generally are required to "maintain land in their possession and control in a reasonably safe condition." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 (*Ann M.*), disapproved on other grounds in *Reid v. Google, Inc.*, *supra*, 50 Cal.4th 512, 527, fn. 5.)

In matters such as this one, factors that courts may consider when determining the existence and scope of duty include: "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 113.) The primary considerations when making this determination are the foreseeability of the harm measured against the burden imposed on the landlord to prevent the harm. (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 280.)

In general, there is no duty to protect another from the conduct of a third party. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 (*Delgado*).) Plaintiff contends that in this case the Ferraro defendants had a heightened duty because of the "special relationship" that was formed because of his status as a patron of the Dresden. Plaintiff is correct that a special relationship existed. "Courts have found such a special relationship in cases involving the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees." (*Ibid.*) The duty created by the special relationship has been summarized as follows: "In the case of a landlord, this general duty of maintenance, which is owed to tenants and patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable

7

criminal acts of third parties that are likely to occur in the absence of such precautionary measures." (*Ann M.*, *supra*, 6 Cal.4th 666, 674; *Delgado*, at p. 235.) However, even when a special relationship exists, foreseeability is key. "[A] duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated." (*Ann M.*, at p. 676.)

Foreseeability is balanced against the burden of the duty imposed. "Where the burden of prevention is great, a high degree of foreseeability is usually required; whereas where there are strong public policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." (*Rinehart v. Boys & Girls Club of Chula Vista*, *supra*, 133 Cal.App.4th 419, 431.) Even if the burden is minimal, however, the proposed preventive act must be feasibly effective. "[D]uty in such circumstances is determined by a balancing of 'foreseeability' of the criminal acts against the 'burdensomeness, vagueness, and efficacy' of the proposed security measures." (*Ann M.*, *supra*, 6 Cal.4th at p. 679.)

## B. Application to this case

Plaintiff proposes several measures that he contends could have been taken by the Ferraro defendants to prevent the harm he suffered. He contends that Ferraro could and should have told Brewer and Ikeda to go home, or told plaintiff to go home, or placed a member of the security staff in the vicinity to escort patrons to cars or watch the adjacent property while patrons left. Alternatively, he contends that Ferraro could have advised Brewer and Ikeda to leave the Dresden patrons alone, or that Ferraro could have called the police.

None of these proposed measures would have been particularly burdensome. Simply because the burden was light, however, does not mean that the Ferraro defendants necessarily owed a duty. We still must consider the foreseeability of the criminal act, and whether the vagueness and potential inefficacy of the measures that plaintiff proposes render them too speculative to support a finding of duty.

Plaintiff contends that two California Supreme Court cases, *Delgado* and *Morris v. De La Torre* (2005) 36 Cal.4th 260 (*Morris*), are controlling. In *Delgado*, the plaintiff

and a group of men were staring aggressively at each other in the defendant bar. A bouncer observed the staring and felt that a fight would occur. (*Delgado*, *supra*, 36 Cal.4th 224, 231.) He asked the plaintiff to leave, and the plaintiff and his wife went out to the parking lot. There was no bouncer in the parking lot. The group of men followed the plaintiff into the parking lot, where, joined by friends, they severely beat the plaintiff. (*Ibid.*)

The plaintiff in *Delgado* argued that the defendant had an obligation to provide additional security. The court found that the special relationship-based duty between a proprietor and its patron compels the hiring of security guards only if there is "'heightened'" foreseeability of criminal activity on the premises, shown by prior similar incidents or other evidence of a reasonably foreseeable risk of criminal assault at the location. (*Delgado*, *supra*, 36 Cal.4th at p. 240.) However, the defendant could still owe a duty to "respond to events unfolding in its presence by undertaking reasonable, relatively simple, and minimally burdensome measures." (*Id*. at p. 245.) The court noted that the bouncer inside the bar concluded that a fight was likely to occur absent his intervention, and because the defendant had actual notice of an impending assault, it had a duty "to respond to the unfolding events by taking reasonable, relatively simple, and minimally burdensome steps." (*Id*. at pp. 245-246, 250.) These steps could have included maintaining separation between the plaintiff and the group of men, or "in light of the clear foreseeability of an imminent assault absent separation," attempting to dissuade the group from following the plaintiff. (*Id*. at pp. 246-247, fn. 26.)

In *Morris*, the plaintiff was waiting in the parking lot of the defendant's restaurant for his friends to purchase food, when he was assaulted by gang members. (36 Cal.4th 260, 266.) The restaurant employees saw the assault taking place, and they watched one of the gang members take a knife from the restaurant to stab the plaintiff. (*Id*. at p. 266-267) None of the employees called 911 or took any action relating to the assault. (*Id*. at p. 267.) The court explained that even when a proprietor has no duty to provide security guards, it still "owes a special-relationship-based duty to undertake reasonable and minimally burdensome measures to assist customers or invitees who face danger from

9

imminent or ongoing criminal assaultive conduct occurring upon the premises." (*Id.* at p. 270.) Thus, to protect the plaintiff from an ongoing crime, the defendant, through the restaurant employees, owed a duty to call 911. (*Id.* at pp. 264, 276.)

As noted in *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 156 (*Margaret W.*), the crucial factor in *Delgado*, *Morris*, and similar cases analyzing a defendant's liability for a third party's criminal conduct, is foreseeability. "[A]nd that— no matter whether a heightened or lesser degree of foreseeability was required and no matter whether the actual crime committed or only similar conduct needed to be foreseen—foreseeability must be measured by what the defendant actually knew. None of these cases has held that a defendant owed a duty to take steps to prevent or respond to third party crime on the basis of constructive knowledge or information the defendant should have known. We are not aware of any case involving liability for third party criminal conduct that has held that a special relationship creates a duty to investigate or that has charged a defendant with making forecasts based on the information such an investigation might have revealed." (*Margaret W.*, at p. 156.)

We find the *Margaret W.* analysis apposite here. In both *Delgado* and *Morris*, dangerous events were unfolding in the presence of the defendants, and the *Delgado* court found that a restaurant or bar proprietor has a duty to take "reasonable and appropriate measures to protect patrons or invitees from imminent or 'ongoing' criminal conduct." (*Delgado*, *supra*, 36 Cal. 4th 224, 241.) In both cases, "it was far more than merely conceivable that a criminal assault would occur based on what the defendants actually knew and could see." (*Margaret W.*, *supra*, 139 Cal.App.4th 141, 160.) In the instant case, the facts alleged in the SAC, though bizarre, do not describe a situation in which the Ferraro defendants were aware of an imminent or ongoing dangerous situation. Ikeda and Brewer were acting strangely in the parking lot, and plaintiff and other partygoers had been drinking. These were likely not unusual occurrences at the Dresden—people hanging around bars late at night often are intoxicated and behave strangely—and these facts did not make it more than merely conceivable that violence would occur.

10

The allegation that Ikeda vandalized a patron's car does not change the analysis. "[I]n appropriate circumstances, a duty can be premised on the foreseeability of a harm different from the one that actually occurs, so long as it is closely enough related to the harm that occurs." (*Margaret W.*, *supra*, 139 Cal.App.4th 141, 157.) The alleged vandalism of the car did not make it foreseeable that a violent assault would occur some time later at a neighboring building. There was no indication that violence was likely or reasonably could be anticipated. The SAC contains no allegations that the Ferraro defendants knew that plaintiff confronted Brewer and Ikeda, or that the Ferraro defendants witnessed the attack while it occurred.

When a complaint's allegations make clear the absence of a legal duty, as they do here, it is proper to dispose of a negligence action on demurrer. In *Melton v. Boustred* (2010) 183 Cal.App.4th 521, the plaintiffs filed suit against a property owner after they were beaten and stabbed while attending a party at the defendant's residence. Affirming the trial court's order sustaining a demurrer without leave to amend, the appellate court found that the defendant's act of publicly advertising on the Internet a free party with alcohol and music did not make a violent criminal act foreseeable. (*Id.* at p. 538.) The court noted that duty is not determined by hindsight, and that foreseeability of harm is a more stringent standard than probability of harm. (*Ibid.*)

Additional factors support the finding that the duty which plaintiff seeks to impose upon the Ferraro defendants was nonexistent. In *Forrand v. Foodmaker, Inc.* (1986) 182 Cal.App.3d 196, the plaintiff entered the defendant's restaurant, was told by an employee to "stop" someone who had just robbed the restaurant, got back in his car and drove a block away where he spotted the purported robber, tried to stop the robber, and was shot in the head. In finding a lack of duty, the court concluded that the plaintiff's act of chasing down the robber was an unforeseeable event not attributable to the defendant. (*Id.* at p. 201.) The plaintiff in this case acted similarly. After being told by a fellow partygoer that a car was being vandalized, plaintiff went out into the parking lot, saw Ikeda running away, ran after her to another building, followed her up a flight of stairs, saw her open a door with a key and then close the door, watched her and Brewer film him

11

from inside the door, pulled out his own cell phone and filmed them, and then finally, after turning to leave, was pepper-sprayed and stabbed—"without any provocation or warning," as alleged in the SAC. In sum, the totality of conduct was so unforeseeable that a violent assault could not have been reasonably anticipated or prevented by the Ferraro defendants.

Finally, the measures that plaintiff proposes should have been taken by the Ferraro defendants suffer from being vague and of questionable efficacy. We cannot impose a duty to undertake an act that was not apparently called for at the moment, but after the fact may be deemed effective. Hindsight does not factor into our determination of duty. (*Melton v. Boustred*, *supra*, 183 Cal.App.4th 521, 528.)

Accordingly, the trial court's order sustaining the Ferraro defendants' demurrer was proper.

## III. Request for Leave to Amend

Plaintiff has not met his burden of demonstrating a reasonable possibility of curing the defects in his complaint. (See *Blank v. Kirwan*, *supra*, 39 Cal.3d 311, 318.) The amendments that plaintiff offers in his appellate brief closely resemble the allegations already made in the SAC, and do not lead to the conclusion that the Ferraro defendants owed the claimed duty. Therefore, we find no abuse of discretion in the trial court's decision to sustain the demurrer without leave to amend.

## DISPOSITION

The judgment entered on April 17, 2013, is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:

ASHMANN-GERST, J.            FERNS, J.*

_____
*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12