Filed 9/26/16  Villegas v. ADT LLC CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| ANTONIO VILLEGAS, | B260761 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC510665) |
| ADT LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Amy Hogue, Judge.  Reversed and remanded with directions.

Kearney Littlefield, Thomas A. Kearney, Prescott Littlefield; Law Office of Shea S. Murphy, Shea S. Murphy; Ringler Schmidt, Catherine Burke Schmidt; Esner, Chang & Boyer, Stuart B. Esner for Plaintiff and Appellant.

Quinn Emanuel Urquhart & Sullivan, Dominic Surprenant, Paul Slattery, Daniel H Bromberg for Defendant and Respondent ADT LLC.

Sheppard, Mullin, Richter & Hampton, Fred R. Puglisi, Valerie E. Alter, Jay T. Ramsey for Defendant and Respondent IMI Marketing, Inc.

_____

Plaintiff contends that defendants—businesses involved in the sale, installation, and monitoring of alarm systems—committed statutory and municipal code violations by failing to inform him of a permit fee required for installation of an alarm system, and by installing his alarm system without a permit. Plaintiff was fined when his system registered a false alarm and was found to be unpermitted. He brought a lawsuit against defendants, asserting various causes of action, including several under the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.[1]). The trial court sustained demurrers without leave to amend, finding that defendants committed no statutory or municipal code violations, and that plaintiff was responsible for his own injury.

We find that certain of plaintiff's causes of action, including his UCL claims, were sufficiently pleaded. Accordingly, we reverse.

## BACKGROUND

In his operative second amended class action complaint (SAC), plaintiff and appellant Antonio Villegas alleges that defendants and respondents ADT LLC (ADT) and IMI Marketing, Inc. (IMI), an "ADT authorized dealer," sell, install, and monitor alarm systems in the City of Los Angeles (the City) without informing customers that the City requires an alarm permit and associated fee. Even though defendants know customers who use an alarm system without a permit will be in violation of City law, defendants fail to inform them of the permit requirement and cost.

According to the SAC, Villegas, who was not aware of the permit requirement, purchased an alarm system and monitoring services from defendants in 2010 for a total price of $1,727.64. After his system experienced a false alarm in 2012, Villegas was billed $251 by the Los Angeles Police Department for a false alarm from his unpermitted alarm system. Villegas paid the fine. If the system were permitted, the fine would have been $151 ($100 less), or Villegas would have had the option of attending a "free alarm school" to have the bill waived entirely.

---

[1] Unless otherwise specified, all further statutory references are to the Business and Professions Code.

Villegas alleges that defendants' sales practices violate the Alarm Company Act (§ 7590 et seq.), specifically section 7599.54, subdivision (i)(7), which requires residential alarm sales and lease agreements exceeding $250 to include a disclosure of potential permit fees. At the time the SAC was filed, the cost of a permit from the City was $34, a detail not mentioned in defendants' Alarm Services Contract (the contract) with Villegas. Villegas further alleges that defendants' business practices violate Los Angeles Municipal Code (LAMC) section 103.206, subdivision (b), which states "No person shall install, connect, activate, operate or use an Alarm System without a valid Alarm System permit having been issued for that purpose," and LAMC section 103.206.1, subdivision (c)(1), which prohibits an alarm company from installing an alarm system unless (A) the customer has already obtained an alarm system permit or (B) the alarm company collects a completed alarm system permit application and applicable fee from the customer and files it before installing the alarm system. The contract did not disclose the permit requirement and the alarm system was installed without a permit.

The SAC alleges six causes of action: (1) violation of UCL for illegal business practices; (2) violation of UCL for unfair business practices; (3) violation of UCL for fraudulent business practices; (4) violation of the Consumer Legal Remedies Act (CLRA), Civil Code section 1750 et seq.; (5) negligent misrepresentation; and (6) breach of written contract.

Defendants filed demurrers to the SAC, arguing, in part, that they complied with their obligations to disclose alarm permits under the Alarm Company Act and that Villegas contractually promised to obtain any necessary permits. In support of these arguments, defendants pointed to language in the contract stating: "Customer is responsible for obtaining all alarm permits and providing permit information to ADT Authorized Dealer" and "Monitoring Services are initiated upon activation of the Equipment, receipt of satisfactory signals sent by the central station, and receipt of all necessary fire and police permits from you."

The trial court sustained the demurrers to the SAC without leave to amend. Following entry of judgment, Villegas timely appealed.

**DISCUSSION**

We review the ruling sustaining the demurrers de novo, exercising independent judgment as to whether the complaint states a cause of action as a matter of law. (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1115 (*Desai*).) We give the complaint a reasonable interpretation, assuming that all properly pleaded material facts are true, but not assuming the truth of contentions, deductions, or conclusions of law. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 (*Aubry*).)

A demurrer tests the legal sufficiency of the complaint. (*Hernandez v. City of Pomona* (1996) 49 Cal.App.4th 1492, 1497.) Accordingly, we are not concerned with the difficulties the plaintiff may have in proving the claims made in the complaint. (*Desai*, *supra*, 47 Cal.App.4th at p. 1115.) We are also unconcerned with the trial court's reasons for sustaining the demurrer, as it is the ruling, not the rationale, that is reviewable. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631; *Sackett v. Wyatt* (1973) 32 Cal.App.3d 592, 598, fn. 2.)

I.  **The underlying violations**

    A.  **Villegas alleged a violation of section 7599.54, subdivision (i)(7)**

The trial court's primary basis for sustaining the demurrers, and defendants' principal argument on appeal, is that defendants complied with section 7559.54, subdivision (i)(7), and any injury suffered by Villegas was caused by his own failure to comply with the terms of the contract.

Our first task, therefore, is examining the scope and effect of section 7599.54, subdivision (i)(7). In interpreting a statute, our chief consideration is the purpose of the legislation. (*Lusardi Construction Co. v. Aubry* (1992) 1 Cal.4th 976, 987.) "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.) "In making this determination, an individual phrase or term may not be divorced from the statute as a whole; rather, all parts of the statute must be considered." (*Oxbow Carbon & Minerals, LLC v. Department of Industrial Relations* (2011) 194 Cal.App.4th 538, 548.)

4

Section 7599.54 provides that all alarm system agreements shall be in writing. Section 7599.54, subdivision (i)(7), requires residential alarm sales and lease agreements exceeding $250 to include: "A disclosure informing the buyer of any potential permit fees which may be required by local jurisdictions concerning the monitoring of an existing alarm system."

Defendants contend that the contract, which stated that the "customer" was "responsible for obtaining all alarm permits" sufficiently alerted Villegas of any permit requirements. The trial court agreed, finding that the contract disclosed the "'potential' for local 'permit fees.'" Defendants likewise characterize section 7599.54, subdivision (i)(7), as requiring "alarm companies to disclose the potential for local permit fees, not to identify the existence and amount of specific permits."

We disagree. Both defendants and the trial court read into section 7599.54, subdivision (i)(7), an obligation to inform the buyer of only the potential "for" permit fees, when the actual language of the provision requires a more detailed disclosure. Buyers must be informed of "any potential permit fees which may be required by local jurisdictions." (§ 7599.54, subd. (i)(7).) As the parties note, some jurisdictions require permit fees and others do not. Hence, the provision recognizes that permit fees "may" be required. It also requires that "any potential" fees be disclosed.

This construction is consistent with the remaining clauses of section 7599.54, which impose various obligations on alarm companies in making contracts, including: a "disclosure that alarm company operators are licensed" (§7599.54, subd. (d)); a statement that the alarm company will instruct the purchaser in the proper use of the alarm system (§7599.54, subd. (g)); and a statement describing pertinent provisions of the state's mechanics' lien laws and rights and responsibilities thereunder (§7599.54, subd. (i)(4)). It is also in keeping with the purpose of the Alarm Company Act, which is "to protect the public." (*Lone Star Security & Video, Inc. v. Bureau of Security & Investigative Services* (2012) 209 Cal.App.4th 445, 457; see also § 101.6.)

Thus, in the case of an alarm system sale in Los Angeles County, where (at times pertinent to this case) the permit fee was $34, section 7599.54, subdivision (i)(7),

5

mandates that an alarm company contract disclose this fee. The contract here did not meet this requirement. At most, it informed Villegas of a potential obligation to obtain a permit. It did not inform him that an alarm permit was required by the City and that the associated fee was $34.

We further find that Villegas's asserted breach of the contract's terms, including that "Customer is responsible for obtaining all alarm permits and providing permit information to ADT Authorized Dealer," did not absolve defendants of potential liability for failing to make the required disclosure. Section 7599.54, subdivision (i)(7), puts the onus on alarm companies to disclose "any potential permit fees" in the alarm system agreement, presumably because alarm companies are more likely than members of the general public to be informed of these fees. The provision does not allow alarm companies to delegate this duty to the customer, and the statute does not provide an option for alarm companies to contract around the law. By alleging that the contract failed to disclose potential permit fees, Villegas sufficiently alleged that defendants violated section 7599.54, subdivision (i)(7).

**B. Villegas alleged violations of LAMC sections 103.206 and 103.206.1**

LAMC section 1036.206, subdivision (b), states: "No person shall install, connect, activate, operate or use an Alarm System without a valid Alarm System permit having been issued for that purpose." LAMC section 103.206.1, subdivision (c), explains how this requirement pertains to alarm companies: "(1) An Alarm Company Operator shall not install an Alarm System . . . unless either: (A) The Alarm System User or customer has already obtained a valid Alarm System permit . . . for the premises . . . at which the Alarm System is to be installed, or; (B) The Alarm Company Operator collects a completed Alarm System permit application and applicable permit fee from the customer and files it on behalf of the customer . . . before installing the Alarm System."

The effect of these provisions is clear. An alarm company may not install an alarm system unless (i) a permit for premises where the system will be installed has been issued or (ii) the alarm company has filed a completed permit application and fee on behalf of the customer. Thus, by alleging that defendants installed and activated the

6

alarm system when no permit had been issued, and no application and fee were filed, Villegas sufficiently pleaded that defendants violated LAMC sections 103.206 and 103.206.1.

## II. **First threes cause of action—violation of UCL**

Villegas's first three causes of action were brought under the UCL—the first cause of action for illegal business practices, the second for unfair business practices, and the third for fraudulent business practices. He alleged that defendants' violations of section 7599.54, subdivision (i)(7) and LAMC sections 103.206 and 103.206.1 gave rise to claims under the UCL.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." (§ 17200.) Its coverage is broad, embracing "'"anything that can properly be called a business practice and that at the same time is forbidden by law."'" (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1200.) Members of the public may sue under the UCL if they have suffered injury in fact, and lost money or property as a result of unlawful or unfair acts. (§ 17204; *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227-228.) Recovery is limited to injunctive relief and restitution. (§ 17203.)

The UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.) "'Virtually any law—federal, state or local—can serve as a predicate for an action under Business and Professions Code section 17200.'" (*Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 539.)

### A. Standing

With respect to all three UCL claims, defendants argue that Villegas did not allege any injury resulting from violations of section 7599.54, subdivision (i)(7), or LAMC sections 103.206 and 103.206.1, and therefore lacks standing under the UCL. To satisfy the UCL standing requirement, a party must show that he or she (1) suffered economic injury that (2) was "the result of, i.e., *caused by*," the conduct upon which the UCL claim is based. (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322 (*Kwikset*).) The economic injury element is not particularly difficult to demonstrate. "There are

7

innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." (*Id.* at p. 323.) To satisfy the second requirement that the injury be "a result of" or "caused by" the violation, a plaintiff must show "'a causal connection or reliance on the alleged misrepresentation.'" (*Id.* at p. 326.)

We find that Villegas sufficiently alleged standing. He suffered economic injury, as he was required to pay $251 for a false alarm when, if his system was permitted, the fine would have been $151 or could have been waived entirely. Additionally, Villegas alleges that he suffered injury by paying for installation and monitoring of an alarm system that he thought was fully legal, when he actually got an unpermitted system that left him subject to an additional fine.

We also find Villegas adequately alleged his injury was caused by defendants' failure to inform him of the permit fee and defendants' installation and activation of the alarm system without a permit. Defendants assert that Villegas could have avoided harm if he complied with the contract's instruction to "obtain[] all alarm permits." But, as alleged, defendants' acts and omissions were a cause of his harm because, if Villegas was informed of the permit requirement and associated fee, he would have obtained the permit or insisted that defendants obtain the permit, and, if defendants had not installed and activated the system without a permit, no false alarm would have registered. Alternatively, Villegas asserts that if the permit and fee requirement were disclosed, he would not have purchased the system.

The conduct constituting unfair competition must be an "immediate cause" of the plaintiff's harm, but need not be "the sole or even the decisive cause of the injury-producing conduct." (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 328; *Kwikset*, *supra*, 51 Cal.4th 310, 327.) *Tobacco II* explained the "immediate cause" requirement in the context of an action involving a misrepresentation brought under the UCL's fraud prong:

8

"'A plaintiff may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.'" (46 Cal.4th at p. 326.) Based on the allegations, a trier of fact could find that defendants' acts and omissions were an immediate cause of Villegas's harm because, in their absence, he would not have used or purchased an unpermitted alarm system.[2]

## B. Adequate misrepresentation allegations

With respect to the third UCL claim for fraudulent business practices, defendants argue Villegas did not adequately allege any fraudulent conduct.

Villegas alleged that the contract stated a "purchase amount total" for the alarm system of $179 and a "total initial 3-year term service charge" of $1,727.64, but did not mention the $34 permit fee. Due to the absence of the fee, Villegas believed he was receiving a functioning and fully legal alarm system for the price he paid, when the system was actually unpermitted. Further, Villegas believed that the total cost of the system was less than the amount actually required for a permitted system.

"A fraudulent business practice is one which is likely to deceive the public. [Citations.] It may be based on representations to the public which are untrue, and '"also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under"' the UCL." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471.)

---

[2]    We find no support in the record for defendants' assertion that Villegas contractually agreed to assume the risk, and essentially hold defendants harmless, for any failures to obtain permits. Further, because the allegations do not demonstrate that the doctrine of avoidable consequences would prevent liability on the part of defendants, this separate asserted defense does not constitute a proper ground for demurrer. (See *State Dept. of Health Services v. Superior Court* (2003) 31 Cal.4th 1026, 1044 ["The defendant bears the burden of pleading and proving a defense based on the avoidable consequences doctrine."].)

9

Defendants contend that members of the public are not likely to be deceived by the misrepresentation alleged in the SAC. They argue that other products also require permits with associated fees, but advertisements for those products do not typically disclose those fees. According to defendants, consumers would not expect the permit fee to be disclosed in the "purchase amount total" or "total initial 3-year term service charge" of the contract.

The issue of whether consumers are likely to be deceived, however, is generally a question of fact that cannot be resolved on demurrer, unless the facts alleged compel the conclusion, as a matter of law, that no deception is likely. (*Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 226-227.) In this matter, the allegations do not clearly show that consumers were unlikely to be deceived, particularly given section 7599.54, subdivision (i)(7)'s requirement that subject alarm system agreements include a disclosure informing the buyer of potential permit fees. A consumer could potentially assume that, when a contract is required to disclose a permit fee, that fee will be disclosed in the contract, and if only two prices are quoted in the contract, at least one of those will include the fee.

Therefore, this third cause of action for violation of the UCL, as well as the first two causes of action, were properly pleaded, and the demurrers as to these three causes of action should have been overruled.

### III. Fourth cause of action—violation of the CLRA

Villegas's CLRA claim is subject to a similar standard as the one governing his fraudulent business practices claim under the UCL. "'[T]he reasonable consumer standard' applies to actions involving claims under the CLRA and the UCL for unfair or deceptive business practices." (*Aron v. U-Haul Co. of California* (2006) 143 Cal.App.4th 796, 806 (*Aron*), citing *Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1360.) To state a cause of action for a fraudulent or deceptive representation under the CLRA, a plaintiff must allege facts sufficient to support a conclusion that "'"members of the public are likely to be deceived."'" (*Aron*, at p. 806.) In *Aron*, the plaintiff claimed that a rental truck agreement was misleading in that it

charged a fee for refueling the truck, when fuel was not actually replaced after the truck was returned.  He was found to have properly stated causes of action for fraudulent business practices and for violation of the CLRA, under Civil Code section 1770, subdivision (a)(5).  (*Aron*, at pp. 806-807.)

As explained above, Villegas adequately alleged that reasonable consumers are likely to be deceived by defendants' alarm system contract, as they may assume that upon signing the contract and paying the stated charges, they will receive a fully legal and operational alarm system, instead of one that is unpermitted and subject to a fine, and one that, under the LAMC, should not have been installed in the first place.  Reasonable consumers may also wrongly believe that the amount charged by defendants is the total cost for a fully compliant alarm system, as the contract does not reference the $34 permit fee.

At a minimum, therefore, Villegas has properly stated a CLRA claim under Civil Code section 1770, subdivision (a)(5)—which prohibits representations that "services have . . . uses [or] benefits . . . which they do not have"—and subdivision (a)(14)—prohibiting representations that "a transaction confers . . . rights . . . which it does not have . . . or which are prohibited by law."  These are sufficient bases upon which to state a CLRA claim, and the demurrers as to this cause of action should not have been sustained.

## IV.  Fifth cause of action—negligent misrepresentation

The contract contains a term stating:  "Monitoring Services are initiated upon activation of the Equipment, receipt of satisfactory signals sent by the central station, and receipt of all necessary fire and police permits from you."  The SAC alleged that because defendants ultimately acted in a way that did not comport with this term—that is, defendants initiated monitoring services without collecting necessary permits from Villegas—this statement was untrue and constituted a negligent misrepresentation.

The elements of negligent misrepresentation are:  "the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true," justifiable reliance, and resulting damage.  (*Conroy v. Regents of University of California*

11

(2009) 45 Cal.4th 1244, 1255.) On appeal, Villegas offers only a cursory explanation of his claim, offering no guidance on how defendants committed a negligent misrepresentation except by stating that defendants later acted in a way that was inconsistent with the contract term. The claim fails because Villegas does not allege an untrue statement of fact, and does not allege that defendants had no reasonable grounds for believing such a statement to be true at the time the statement was made. The fact that defendants may have later acted inconsistently with this term by initiating services without permits does not support an assertion that the contract term was a misrepresentation when made.

The demurrers as to the negligent misrepresentation cause of action were therefore properly sustained.

## V. <u>Sixth cause of action—breach of contract</u>

On appeal, plaintiff argues that the trial court erred by sustaining the demurrers to the breach of contract cause of action because the contract implicitly promised that the alarm system installed by defendants would be legal.

Viewed solely in the context of a breach of contract action, defendants owed no contractual duty that was breached. The implied covenant of good faith and fair dealing "requires mutual fairness in applying a contract's actual terms," but "it cannot substantively *alter* those terms." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 327.) The contract at issue here expressly called for Villegas to obtain all necessary permits. It did not warrant—either explicitly or implicitly—that the alarm system would be properly permitted if Villegas did not obtain a permit. Although, as explained above, the terms of the contract potentially support other claims, they do not give rise to a breach of contract claim, at least as contended by Villegas.

## DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to enter an order sustaining, without leave to amend, defendants' demurrers to the SAC's fifth and sixth causes of action and overruling the demurrers as to the first four causes of action.

12

Villegas is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

CHAVEZ, J.

HOFFSTADT, J.

13