[No. B163709. Second Dist., Div. Two. June 1, 2004.]

ARACEIL RIOS, Plaintiff and Appellant, v.
SCOTTSDALE INSURANCE COMPANY et al., Defendants and
Respondents.

COUNSEL

Kroll Law Corporation, Gerald L. Kroll and Carrie Santulli Schudda for Plaintiff and Appellant.

Selman • Breitman, Neil Selman, Meka Moore and Richard D. Bremer for Defendants and Respondents Scottsdale Insurance Company and UCA General Insurance Services.

Goshgarian & Marshall and Mack T. Humes for Defendant and Respondent Lin Lan.

## OPINION

**BOREN, P. J.**—Plaintiff, Araceil Rios doing business as Joyeria Latina Americana (Rios), obtained an insurance policy for her jewelry store that she thought covered her for theft. Rios requested such coverage, but the policy actually issued did not include coverage for theft. Thereafter, Rios's store was burglarized, and defendants, Scottsdale Insurance Company (Scottsdale) and UCA General Insurance Services (UCA), rejected her insurance claim for theft of the jewelry.

Rios sued, inter alia, Scottsdale (the insurer), UCA (the surplus lines broker through whom the coverage was placed), and Lin Lan (who owns UCA), alleging causes of action for breach of insurance contract, breach of duty of good faith and fair dealing, negligent misrepresentation, and fraud.[1] The trial court granted summary judgment against Rios. We affirm, since (1) the causes of action for breach of contract and breach of implied covenant of good faith fail for lack of any coverage for the loss, (2) the causes of action for negligent misrepresentation and fraud fail since no erroneous representations by Whilt, Rios's insurance agent, can be imputed to Scottsdale or UCA, and (3) Whilt, as a matter of law, was not an agent for either Scottsdale or UCA.

## FACTUAL AND PROCEDURAL SUMMARY

Rios contacted Whilt to procure insurance coverage for her jewelry store in Santa Barbara. Whilt solicited UCA and other insurance brokers for quotes for a commercial package policy for Rios's retail jewelry store. As a part of this request, Whilt submitted an application requesting a quote for "special"

---

[1] Rios apparently characterizes UCA as the general agent of Scottsdale and Lin Lan as the surplus lines broker. However, the California Insurance Code does not permit UCA to act as the general agent of a nonadmitted insurer (*Mor-Ben Ins. Markets Corp. v. Department of Insurance* (1986) 179 Cal.App.3d 1233 [225 Cal.Rptr. 281]), and, in the present case, UCA is the surplus lines broker. Documentation from the California Department of Insurance indicates that the surplus lines broker license was issued to both UCA and Lin Lan. Lin Lan asserts in her opening brief that she is the owner and 100 percent shareholder of UCA.

Rios also sued J.C. Whilt & Co. Insurance Services, Inc. (Whilt) for negligence. Rios had dealt directly with Whilt, the insurance agency she contacted requesting an insurance policy covering theft. Rios ultimately settled with Whilt, who was then dismissed from the action.

business and personal property coverage. Whilt prepared the application for insurance for her; the application was silent as to Whilt's status as a broker.

The underwriter for UCA advised Whilt that it would not quote special form coverage with a commercial package policy for Rios, unless the building had been upgraded regarding wiring, plumbing, heating, and roofing. When Whilt informed UCA that there were no such upgrades, UCA refused to offer special form coverage. In fact, UCA had returned Rios's application to Whilt after UCA wrote on the application the limits for business income coverage (which Whilt had neglected to provide) and, most significantly, UCA struck out the word "special" and wrote over it the word "basic." One of the differences between the special form coverage and the basic broad form coverage is that the latter does not insure against theft. UCA then provided a policy quote reflecting the counteroffer for only basic broad form coverage through Scottsdale at a cost of $932.64.

Thereafter, Whilt requested that UCA "bind and issue property & liability coverage" for Rios's property "per your quote of $932.64 effective 2/12/01." In doing so, Whilt requested for Rios the basic broad form coverage that did not insure against theft.

Scottsdale thus issued to Rios the policy it had quoted, effective February 12, 2001, through February 12, 2002. And on February 12, 2001, Whilt prepared and presented a policy binder for Rios, with Scottsdale noted as the insurer. The policy binder prepared and presented by Whilt mistakenly represented that the policy included "Special Form" coverage.

Rios believed the policy she obtained was the type of policy she had authorized Whilt to get for her, which specifically would have included theft coverage. By March 28, 2001, Whilt received from Scottsdale a copy of Rios's insurance policy, which did not include special form coverage that would have provided theft insurance.

On June 19, 2001, Rios's jewelry store was burglarized. Rios suffered a theft loss that she believed was covered by her insurance policy. Rios promptly tendered the loss to Whilt, who referred the claim to UCA. On July 26, 2001, Scottsdale rejected Rios's insurance claim because the policy did not cover loss from theft. On August 2, 2001, Whilt finally delivered a copy of the insurance policy to Rios.

The trial court granted summary judgment against Rios on her various causes of action against Scottsdale, UCA, and Lin Lan. The court observed, in part, that Whilt, who was Rios's insurance broker, was primarily responsible for failing to obtain the type of policy requested, which should have included coverage for theft.

## DISCUSSION

I. *No valid cause of action for breach of insurance contract.*

In the first amended complaint, Rios alleged that Scottsdale breached the insurance contract by failing to honor the policy and indemnify her for her loss. However, the plain language of the policy issued does not include coverage for loss due to theft. Theft is simply not one of the specified and enumerated perils covered by the policy.

It is well settled that it is the burden of the insured to show that a loss falls within the basic scope of coverage of a policy. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 16 [44 Cal.Rptr.2d 370, 900 P.2d 619].) When an occurrence is clearly not included within the coverage afforded by the insuring clause, it need not also be specifically excluded. (*Glavinich v. Commonwealth Land Title Ins. Co.* (1984) 163 Cal.App.3d 263, 270 [209 Cal.Rptr. 266].) The analysis of an insurance policy, like any other contract, is guided by the mutual intent of the parties, which is found, if possible, solely in the written provisions of the contract. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 821–822 [274 Cal.Rptr. 820, 799 P.2d 1253].) The clear and explicit meaning of those provisions, as interpreted in their ordinary and popular sense, controls the interpretation unless the terms are either used by the parties in a technical sense or are given special meaning by the usage of the terms. (*Ibid.*)

In the present case, the provisions of the policy clearly and unambiguously do not provide coverage for theft. Theft is not included among the specified and enumerated perils covered by the policy issued. (See *Pryor v. State Farm Fire & Cas. Co.* (1977) 74 Cal.App.3d 183, 186–187 [141 Cal.Rptr. 394].)

Nor is there any merit to the argument by Rios that the binder issued by Whilt, her own agent, constituted the policy, as opposed to the actual policy itself. The policy binder was prepared and presented by Whilt, and it mistakenly represented that the policy included "Special Form" coverage. However, Whilt's mistaken representation within the binder that the policy was a "Special Form" policy is for several reasons of no consequence regarding any liability by Scottsdale.

The Insurance Code declares that an insurance binder may be deemed an insurance policy only "for the purpose of proving that the insured has the insurance coverage specified in the binder." (Ins. Code, § 382.5.) However, the statute further provides that purpose of a binder is merely to assist the insured in proving to third parties that it has coverage until the actual policy is issued. (See Ins. Code, § 382.5, subd. (d).) And a binder is only valid for a

period "not exceeding 90 days from the date of execution of the binder or, if not specified, for that period of 90 days." (Ins. Code, § 382.5, subd. (c).) "No binder shall remain valid on or after the date that the insurance policy is issued with respect to which the binder was given." (*Ibid.*) Therefore, even if the binder prepared by Whilt could be deemed the actual policy for a limited time, the binder expired on February 21, 2001, the date the actual policy was issued, and long before Rios incurred her theft loss on June 9, 2001.

Moreover, Whilt's mistaken representation within the binder that the policy was a "Special Form" policy cannot be imputed to Scottsdale or UCA. As indicated by Whilt's deposition and a declaration by an underwriter for UCA, Whilt was an agent for the insured and not an agent of the insurer for the purposes in question. As specifically detailed in the "producer brokerage agreement" between Whilt and UCA, "The Broker [Whilt] is not the agent of and has no authority to bind UCA or any of UCA's [authorized] insurance companies[, such as Scottsdale,] for any coverage on new or renewal business or claim thereunder. The broker also has no authority to make any changes in terms and conditions of any policy of insurance issued through UCA."

█ Indeed, "Put quite simply, insurance brokers [such as Whilt], with no binding authority, are *not* agents of insurance companies, but are rather independent contractors . . . ." (*Marsh & McLennan of Cal., Inc. v. City of Los Angeles* (1976) 62 Cal.App.3d 108, 118 [132 Cal.Rptr. 796], italics added.) Consistent with the general rule that a broker has no binding authority and is as a matter of law not a general agent for the insurer, the Insurance Code specifies that an insurance broker is "a person who, for compensation and on behalf of another person, transacts insurance other than life insurance with, *but not on behalf of*, an insurer." (Ins. Code, § 1623, italics added; see also Ins. Code, § 33.) Here, the insurer actually issued the policy quoted to Whilt in the counteroffer, and it did so upon Whilt's apparently negligent acceptance of that broad form policy, with Whilt's having no authority to alter the terms of the policy as offered.

Nor does any case law support Rios's assertion that insurers are somehow bound by the coverage in a proposal or binder prepared by the insured's own agent. Rios's reliance on this court's opinion in *Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110 [55 Cal.Rptr.2d 276] (*Desai*) is misplaced. *Desai* did not involve a discrepancy between the terms of a binder and the actual contract. Rather, *Desai* focused on an objectively reasonable insured layperson's belief as to the coverage provided in light of incompatible and essentially conflicting clauses in the policy issued. (*Id.* at pp. 1116–1118.) *Desai* did not hold that the negligence of an insured's own agent can change the terms of an insurance contract.

In *Desai*, in the context of an improperly granted demurrer to causes of action for breach of contract and negligence, we applied the following established rules of respondeat superior liability: "An insurer, as a principal, may be vicariously liable for the torts of its agent if the insurer directed or authorized the agent to perform the tortious acts, or if it ratifies acts it did not originally authorize. [Citation.] Layered atop the principal/agent relationship of the insurer to its agent is the insurer's fiduciary duty to conduct itself with the utmost good faith for the benefit of its insured. [Citation.] [¶] . . . [¶] A 'failure to deliver the agreed-upon coverage' [type of] case is actionable . . . An insurance agent has an 'obligation to use reasonable care, diligence, and judgment in procuring insurance requested by an insured.' [Citations.] A broker's failure to obtain the type of insurance requested by an insured may constitute actionable negligence and the proximate cause of injury. [Citation.] Moreover, if the agent fails to exercise reasonable care in procuring the type of insurance that the insured demanded and bargained for, the cases hold that the insurer may be liable under theories of ratification and ostensible authority." (*Desai, supra*, 47 Cal.App.4th at pp. 1118–1120.)

Here, Whilt was certainly an agent of the insurer for limited purposes, such as receiving the premium payment and providing a copy of the policy to the insured, but was not as a matter of law its general agent. Also, there was no evidence that Scottsdale (or UCA) ratified Whilt's representation of special form coverage, or vested Whilt with authority to offer such coverage after the only coverage specifically offered by the insurer was the basic form coverage, which did not include theft insurance. (See Civ. Code, §§ 2310, 2316, 2321.) And there was no ostensible agency, as there was no evidence that a principal intentionally, or by want of ordinary care, caused or allowed Rios to believe that Whilt possessed such authority to offer a policy other than that offered by the insurer. (Civ. Code, § 2316.)

Accordingly, there is no triable issue of fact as to whether Scottsdale violated the insurance contract in declining the claim for theft coverage. Summary judgment was properly granted as to the breach of contract claim.

II. *No valid cause of action for breach of implied covenant of good faith and fair dealing.*

Rios also alleged a cause of action against Scottsdale for breach of the implied covenant of good faith and fair dealing by failing to indemnify her for her loss. However, since the policy did not provide coverage for her loss, as discussed above, there can be no bad faith. "[A] bad faith claim cannot be maintained unless policy benefits are due." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 [271 Cal.Rptr. 246]; see *Waller v. Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 36.)

Moreover, Rios's assertion that the matter was not properly investigated does not support her bad faith claim. First, the claim was for theft loss, and it is undisputed that the policy provided absolutely no coverage for theft loss. There is thus nothing that an investigation could have revealed to Rios's benefit. Second, even if there was a legitimate dispute over policy language, which is not the case here, a genuine dispute as to coverage based on policy language could arguably preclude any bad faith claim. (See *American Casualty Co. of Reading, Pa v. Krieger* (9th Cir. 1999) 181 F.3d 1113, 1123.)

Therefore, Rios has failed to raise a triable issue of fact regarding the reasonableness of Scottsdale's denial of coverage. Summary judgment was properly granted as to the claim for breach of the implied covenant of good faith and fair dealing.

III. *No valid causes of action for negligent misrepresentation or fraud.*

Rios contends that Scottsdale and UCA misrepresented the scope of coverage of Rios's policy and therefore are liable for negligent misrepresentation and fraud. Rios alleges three "misrepresentations": UCA's change of the application by crossing out "special" and writing "basic" on an internal document; Whilt's erroneous representation to Rios that the policy included theft coverage; and a misrepresentation by Lin Lan to Scottsdale in allowing the application to be changed.[2]

██ To prevail on a cause of action for negligent misrepresentation, the insured must show that the insurer misrepresented to the insured a past or existing material fact without reasonable grounds for believing it was true. And the insurer must have intended to induce the insured's reliance on the misrepresentation, with the insured ignorant of the truth and damaged by justifiable but erroneous reliance on the misrepresentation. (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962 [226 Cal.Rptr. 532].) A cause of action for fraud is similar, but it requires the insurer knowingly make a false representation to the insured with the intent to defraud. (*Schultz v. Harney* (1994) 27 Cal.App.4th 1611, 1622 [33 Cal.Rptr.2d 276].)

In the present case, the underwriting documents show that Rios, through Whilt as her chosen broker, (1) was properly advised that UCA and Scottsdale rejected Rios's request for "special" form coverage, (2) was only offered

---

[2] Rios added Lin Lan as a Doe defendant as to the causes of action for negligent misrepresentation, fraud, and negligence. UCA, which is owned by Lin Lan, is a licensee authorized to transact business on behalf of, among other insurers, Scottsdale. Rios apparently seeks Lin Lan's liability as derivative of UCA's liability. However, UCA has no liability, as discussed herein, and thus Lin Lan has no derivative liability. Nor did Lin Lan herself participate in, authorize, or direct any wrongful act toward Rios so as to warrant any personal liability.

a quote for "basic" form coverage, and (3) accepted and paid for the "basic" form coverage. Thus, even if there were any misrepresentations, Scottsdale and UCA are blameless. Neither insurer communicated directly with Rios, as all communications went through Whilt, who was Rios's broker.

Moreover, Rios's notions of agency fail. As previously discussed and as established in Whilt's deposition, in the declaration by an underwriter for UCA, in the terms of brokerage agreement between Whilt and UCA, and in various legal authorities, as a matter of law, Whilt was not an agent of the insurers. He had no authority to alter the terms of coverage or to present a policy other than that offered by the insurer.

Finally, Rios's focus on UCA's alteration of her application to establish fraud is unavailing. "An application for insurance is a proposal. . . . [T]he proposal is not a completed contract until it is accepted by the insurer in the same terms in which the offer was made. If the acceptance modifies or alters any of the terms of the proposal, it must then in turn be accepted by the applicant to be effective as a contract." (*Linnastruth v. Mut. Benefit etc. Assn.* (1943) 22 Cal.2d 216, 219 [137 P.2d 833].) The application here was altered, by interlineations, to reflect in an honest and accurate manner a counteroffer, which was the only coverage Rios was offered and the coverage she then accepted through her agent, Whilt. Thus, in modifying the insured's application, no insurer made any misrepresentations.

Therefore, summary judgment was properly granted as to the causes of action for negligent misrepresentation and fraud.

## DISPOSITION

The judgment is affirmed.

Doi Todd, J., and Ashmann-Gerst, J., concurred.