Filed 3/20/15  Mulligan's Painters v. Safebuilt Ins. Services CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MULLIGAN'S PAINTERS, INC., | B251748 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC463478) |
| v. | |
| SAFEBUILT INSURANCE SERVICES, | |
| Defendant and Respondent. | |

---

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald M. Sohigian, Judge.  Affirmed.

Law Office of Sohaila Sagheb and Sohaila Sagheb for Plaintiff and Appellant.

Grant, Genovese & Baratta, Christopher S. Dunakin and Stelios A. Chrisopoulos for Defendant and Respondent.

_____

Plaintiff Mulligan's Painters, Inc. (Mulligan's) appeals summary judgment in favor of Safebuilt Insurance Services, dba SIS Insurance Services, Inc. (SIS), which is the managing general agent of Preferred Contractor's Insurance Company (PCIC). Mulligan's, a painting contractor, believed that Mulligan's purchased a liability policy from defendant Daniel Carmona issued by PCIC. Mulligan's learned, after a fire at a residence where Mulligan's was the painting subcontractor, that Carmona had never forwarded the premiums to PCIC to obtain the policy. The trial court held that Carmona was the broker for SIS, and not its agent, and therefore SIS had no liability to Mulligan's for Carmona's failure to obtain the policy, and denied Mulligan's motion to file a second amended complaint to more fully allege this theory of recovery. We affirm, finding no triable issues of fact exist as to whether Carmona was an agent for PCIC.

**BACKGROUND**

*1. Factual Background*

On June 15, 2011, Mulligan's commenced this action against Daniel Carmona (Carmona), Farmers Insurance Company, Inc., Truck Insurance Exchange, Farmers Insurance Exchange (collectively Farmers), SIS, and PCIC.[1] The operative FAC alleged claims against SIS for negligence and declaratory relief. At issue in this appeal is Mulligan's claim against SIS, which is the managing general agent of PCIC.

Mulligan's is a painting contractor. For 10 years, Mulligan's purchased its liability insurance from Daniel Carmona at Daniel Carmona Insurance Agency.[2] Mulligan's customarily placed its policies with Carmona using various carriers. Mulligan's paid its premiums by making a down payment at Carmona's offices with the expectation that Carmona would use those sums to place policies. The financed amount was paid to General Agents Acceptance Corp. (GAAC).

---

[1] The original complaint is not part of the record on appeal. The first amended complaint (FAC) was filed November 1, 2012. In May 2013, the trial court denied Farmer's motion for summary judgment.

[2] Daniel Carmona defaulted in this action and is not a party to this appeal.

Mulligan's asserted that Carmona was an agent for Farmers. Carmona had entered into an agent employment agreement with Farmers Insurance Group of Companies in December 1988 pursuant to which Carmona agreed to sell insurance for Farmers Insurance Group and to submit to Farmers Insurance Group applications for insurance underwritten by Farmers. Carmona's business cards specified that he operated an insurance agency under the Farmer's logo and Farmers issued him an agent's errors and omissions policy for the period January 1, 2006 to January 1, 2007. In addition, Carmona's office window coverings and indoor décor carried the Farmer's logo and stated "Farmer's Insurance Agent."

On the other hand, Mulligan's was not told that when Carmona placed policies with non-Farmers insurance companies, Carmona was acting as a broker. Mulligan's never knew or had notice that Carmona was a licensed insurance broker. Carmona never disclosed that he was a broker or that he maintained a broker's bond. He did not indicate he charged broker's fee or the amount of such fee. Neither PCIC nor SIS gave Mulligan's notice that Carmona did not have authority to bind coverage with PCIC as Carmona had with all of the Farmer's entities with which Mulligan's had been insured.

Carmona placed Mulligan's with a PCIC policy effective August 5, 2006. Carmona represented to Mulligan's that Carmona had placed Mulligan's with PCIC for 2006–2007 and 2007–2008 without interruption in coverage. Carmona provided Mulligan's with Certificates of Insurance for each of these two policies. Mulligan's made payments for these policies. In fact, Carmona had only purchased a PCIC policy on Mulligan's behalf for the period August 5, 2006 to August 5, 2007, and PCIC did not issue a policy to Mulligan's for the period August 5, 2007 to August 5, 2008. Later, Carmona obtained a policy with Pro Builders Insurance Company on October 26, 2007.

During the gap in coverage from August 5, 2007 to October 26, 2007, in September 2007, Notch Custom Builders, Inc. hired Mulligan's as a painting subcontractor in connection with a construction project at a residence located in Thousand Oaks. Mulligan's was required by the contract to obtain insurance. As determined by the Ventura County

3

Fire Department, a fire started at the residence when some linseed-soaked rags spontaneously combusted. After the homeowners made a claim on their fire insurance policy, Mulligan's asked Carmona to put Mulligan's carriers on notice of the loss and Carmona did so. When Mulligan's asked Carmona for status updates, Mulligan's was informed that various insurance companies were working the matter out amongst themselves.

In August 2010, State Farm, the homeowners' insurer, filed a subrogation action against Mulligan's. State Farm had paid the homeowners $145,498.92 to repair the loss caused by the fire. Mulligan's requested Carmona to forward the action to Mulligan's insurance carriers for proper handling. Carmona did not respond, and Mulligan's retained its own counsel to defend the action. Counsel tendered the action to Farmers and PCIC, but tender was declined.

Mulligan's learned that Carmona had failed to obtain coverage during the period August 5, 2007, after expiration of the PCIC policy. In February 2010 a felony complaint was filed against Carmona for grand theft based on collection of premiums but failure to pay the insurance companies.

2. *Summary Judgment*

In May 2013, SIS moved for summary judgment asserting that it had no vicarious liability for Carmona's negligence because Carmona was not SIS's agent or broker, and Carmona had no authority to bind SIS. Carmona had not notified the Department of Insurance that Carmona was acting as SIS's agent. Further, Carmona was not SIS's ostensible agent nor did Carmona have authority to bind SIS even if he were acting as SIS's agent. SIS relied on the Limited Producer Agreement between it and Carmona. The Limited Producer Agreement expressly provided that Carmona had "no authority to bind any coverages on new or renewal business, or claim hereunder, or make any changes in terms and conditions of any policy of insurance." Carmona had "no authority to issue a binder in the name of [SIS]." Further, Carmona acknowledged that "broker is a representative of the insured and is not acting as an agent or representative of [SIS]."

4

In opposition, Mulligan's argued that there were triable issues of fact whether Carmona had ostensible agency to bind SIS; there was no evidence Carmona acted as SIS's broker; SIS was bound by Carmona's representations regarding the existence of continuous coverage; Mulligan's was entitled to expanded coverage under the 2006 policy to cover the fire loss; and the certificates of insurance constituted a binder. Mulligan's relied on the fact that Carmona was authorized by the limited producer agreement to accept premiums from insureds, and has the responsibility to return unearned premiums, did not post the required bond to act as a broker, and did not collect a broker's fee.

In reply, SIS asserted that Mulligan offered no admissible evidence to dispute the plain language of the limited producer agreement providing that Carmona was not its agent, and there was no material or admissible evidence supporting ostensible agency because nothing demonstrated that Mulligan's relied on any representations by SIS.

### 3. *Trial Court Ruling*

The trial court granted SIS's motion, finding that Carmona was not acting as SIS's agent when he purchased the policies for Mulligan's. The court noted that the limited producer agreement did not authorize Carmona to act as SIS's agent; Carmona acted solely on Mulligan's behalf when it procured insurance for Mulligan's; Carmona and SIS did not notify the Department of Insurance that Carmona was acting as SIS's agent; and Carmona did not hold himself out as an agent of SIS. Further, plaintiffs' theory of ostensible agency was not raised by the pleadings and there was no evidence supporting such a claim.

### 4. *Motion to File Second Amended Complaint*

On August 7, 2013, plaintiff filed a motion to file a second amended complaint to allege additional facts to support its theory of ostensible agency, and requested the court to vacate the order granting SIS's motion for summary judgment. Mulligan's proposed second amended complaint added PCIC as a defendant, and added false advertising claims (Bus. & Prof. Code, § 17500) and unfair business practices claims (Bus. & Prof. Code, § 17200) against the Farmers entities, as well as allegations that Carmona acted as SIS's agent.

5

SIS opposed, pointing out that in the original complaint filed June 15, 2011, PCIC was named as a defendant; in Mulligan's FAC, PCIC was not named as a defendant because a ProBuilder's policy, not a PCIC policy, was procured in October 2007, and joining PCIC at this stage of the litigation would be prejudicial because PCIC would need to conduct its own discovery. SIS requested sanctions.

In reply, Mulligan's asserted it was surprised by the court's ruling that the FAC did not allege any facts supporting a claim of ostensible agency; thus, the court should permit it to amend the FAC to allege such claims. Further, addition of PCIC was appropriate because there was eight months remaining until trial and there were no cut-off dates yet set that would prejudice PCIC. Mulligan's asserted that sanctions were inappropriate because Mulligan's motion to amend was not frivolous as it sought to allege ostensible agency against SIS.

The trial court denied the motion in its entirety.

## DISCUSSION

Mulligan's argues that SIS treated Carmona as its agent because it did not require Carmona to post a bond and the errors and omissions coverage showed that Carmona was insured as an agent; SIS did not notify insureds that Carmona acted as a broker when placing SIS policies; SIS allowed Carmona to collect premiums; and at a minimum, triable issues of fact exist whether Carmona acted as SIS's agent. Further, Mulligan's contends that it is entitled to expanded coverage under the existing 2006 to 2007 policy, and that its FAC contained allegations of ostensible agency, and the trial court erred in refusing to permit Mulligan's leave to amend its complaint to specifically set forth that theory of recovery.

## I. Standard Of Review

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable

6

issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(1); *Aguilar*, at p. 849.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, at p. 850.) Where summary judgment has been granted, we review the trial court's decision de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the trial court properly excluded) and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)

## II.     Agency

The primary distinction between an insurance agent and an insurance broker is that an agent acts on behalf of the insurance company, while a broker acts on behalf of a policyholder. "[A]n agent is defined as one who is 'authorized, by and on behalf of an insurer, to transact all classes of insurance' except for life insurance [citation] while a broker is 'a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer.'" (*Krumme v. Mercury Ins. Co.* (2004) 123 Cal.App.4th 924, 928–929; Ins. Code, §§ 31, 33, 1621, 1623.) An insurance agent represents the insurer in transacting business with the general public, and has the authority to bind the insurer on coverage. A broker has no such authority. Thus, "[a]n insurer, as a principal, may be vicariously liable for the torts of its agent if the insurer directed or authorized the agent to perform the tortious acts, or if it ratifies acts it did not originally authorize." (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1118.) A person's status as an agent or broker is not determined by the labels used, but their conduct. (See *Loehr v. Great Republic Ins. Co.* (1990) 226 Cal.App.3d 727, 733.)

As explained in *Krumme v. Mercury Ins. Co.*, *supra*, 123 Cal.App.4th 924, "'[a]n "insurance broker" is one who acts as a middleman between the insured and the insurer, soliciting insurance from the public under no employment from any special company, and, upon securing an order, placing it with a company selected by the insured or with a company selected by himself or herself; whereas an "insurance agent" is one who represents

7

an insurer under an employment by it. A broker is, in essence, employed in each instance as a special agent for a single purpose, while the very definition of agent indicates an ongoing and continuous relationship. . . . [B]rokers and insureds are ordinarily involved in what can be viewed as a series of discrete transactions, while agents and insureds tend to be under some duty to each other during the entire length of the relationship.' [Citations.]" (*Id*. at p. 929.)

In some cases, a licensed broker may act in a dual capacity and place insurance (acting as a broker) but may also collect premiums and deliver policies to the insured (acting as an agent). In that case, the broker retains the status of a broker. "A person acting as an insurance broker may, on behalf of an insurance company, collect and transmit premium or return premium and deliver policies and other documents evidencing insurance. Performance of those functions shall not be construed for any purpose to mean that the person is an insurance agent." (Ins. Code, § 1732.)

Statutory presumptions exist with respect to each category. A broker is presumed to be a broker if he or she posts any required bond and discloses to the applicant the nature of his or her services, the amount of fees charged, and any compensation from the insurer. (Ins. Code, § 1623.) Where a licensed broker-agent places insurance with an insurer that has appointed the broker-agent as an agent for that purpose, the broker-agent is acting as an agent. (Ins. Code, § 1731.) In other situations, the determination is made on a case-by-case basis. (Ins. Code, § 1623.)

"Ostensible agency" is a form of vicarious liability that applies "when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." (Civ. Code, § 2300.) "Before recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect by the principal sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief. [Citations.] Ostensible agency cannot be established by the

8

representations or conduct of the purported agent; the statements or acts of the principal must be such as to cause the belief the agency exists. [Citations.] "'Liability of the principal for the acts of an ostensible agent rests on the doctrine of 'estoppel,' the essential elements of which are representations made by the principal, justifiable reliance by a third party, and a change of position from such reliance resulting in injury. [Citation.]" [Citation.]' [Citation.]" (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 405–404.)

Here, Mulligan's has failed to demonstrate a triable issue of fact exists whether Carmona acted as SIS's agent. Although Carmona had routinely acted as Mulligan's agent with respect to Farmers insurance policies that Mulligan's procured, Carmona's office contained numerous indicia of his status as a Farmers agent, and Carmona often collected premiums for SIS, these facts alone cannot create agency. Mulligan's has not demonstrated any affirmative act of the principal, SIS, that would confer agency status on Carmona; Carmona's mere collection of premiums under Insurance Code section 1732 is insufficient to do so.

For these same reasons, we conclude that the certificates of insurance here do not constitute binders entitling Mulligan's to expanded coverage. Only an agent may bind the principal, and because we have concluded that Carmona was not acting as SIS's agent, the certificates of insurance cannot constitute binders. (See *Rios v. Scottsdale Ins. Co.* (2004) 119 Cal.App.4th 1020, 1026.)

## III. Leave to Amend

The trial court is permitted in its discretion to allow amendments to pleadings in the furtherance of justice. (Code Civ. Proc., § 473.) "'Ordinarily, courts should "exercise liberality" in permitting amendments at any stage of the proceedings. [Citations.] In particular, liberality should be displayed in allowing amendments to answers, for a defendant denied leave to amend is permanently deprived of a defense.' [Citation.] [¶] '[N]evertheless, whether such an amendment shall be allowed rests in the sound discretion of the trial court. [Citations.] And courts are much more critical of proposed amendments

9

to answers when offered after long unexplained delay or on the eve of trial [citations], or where there is a lack of diligence, or there is prejudice to the other party [citation].'" (*Royal Thrift & Loan Co. v. County Escrow, Inc*. (2004) 123 Cal.App.4th 24, 41–42.)

Here, as relevant,[3] Mulligan's sought to add PCIC as a defendant and to include more allegations regarding SIS's ostensible agency based on the facts adduced during the summary judgment motion. As we conclude that even considering such additional facts, agency cannot be shown under these circumstances, amendment would be an idle act.

### DISPOSITION

The judgment affirmed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.

JOHNSON, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.[*]

---

[3] We do not address the amendments relating to Farmers as Farmers is not a party to this appeal.

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.