Filed 12/9/20  Jason v. American Automobile Assn. etc. CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

TRENT JASON,

      Plaintiff and Appellant,

v.

AMERICAN AUTOMOBILE
ASSOCIATION OF NORTHERN
CALIFORNIA, NEVADA & UTAH
et al.,

      Defendants and Respondents.

A158369

(San Francisco City & County
Super. Ct. No. CGC-18-563695)

Plaintiff Trent Jason purchased automobile insurance at his local American Automobile Association of Northern California, Nevada & Utah, Incorporated (AAA NCNU) office.  Following an automobile accident with a third party, Jason submitted a report to defendant CSAA Insurance Exchange (CSAA).  CSAA denied his claim for benefits.  Jason subsequently sued CSAA and AAA NCNU, alleging AAA NCNU misrepresented that it was his insurer and the defendants improperly denied his claim.

AAA NCNU and CSAA moved for summary judgment on the grounds Jason's insurance policy did not cover the accident at issue.  The trial court granted the motions and entered judgment against Jason.  On appeal, Jason contends the trial court erred because AAA NCNU represented it was his insurer and thus CSAA and AAA NCNU were liable for improperly denying

policy benefits and refusing to investigate his claim.  We disagree and affirm the judgment.

## I.  BACKGROUND

### A.  Factual Background

#### 1.  The Insurance Policy

Jason purchased automobile insurance through an insurance agent, whose offices were in a "AAA"-labeled building.  The cover page of the insurance policy states "AAA Members Car Policy," with the subheading "Designed exclusively for Members."  The bottom of the page provides the name and address for "CSAA Insurance Exchange."[1]  The policy provides, "We agree with you, in return for your premium if paid when due, to insure you subject to all the terms of this policy."  The policy then defines "we," "us," and "our" in the policy as CSAA Insurance Exchange.  The "Automobile Policy Declarations," which summarize Jason's coverage, states, "No Coverage," for collision.  Jason did, however, have uninsured motorists coverage.  That coverage provided in relevant part, "We will pay for loss to your insured car which you are legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle . . . ."  The coverage provision then defines " 'Uninsured Motor Vehicle' " as "any motor vehicle: [¶] (a) which is not insured by a property damage liability bond or policy at the time of the accident; or [¶] (b) which is insured by a property damage liability bond or policy at the time of the accident but the company denies coverage . . . ; or [¶] (c) which is used without permission of the owner if there is no

---

[1] The insurer was originally named California State Automobile Association Inter-Insurance Bureau, then changed its name to AAA Northern California, Nevada & Utah Insurance Exchange, and most recently changed its name to CSAA Insurance Exchange.  At the time of the accident, the insurer was CSAA Insurance Exchange.

property damage liability bond or policy applicable at the time of the accident. [¶] However, a motor vehicle which has at least the minimum property damage liability limits required pursuant to . . . the State of California shall not be held to be an uninsured motor vehicle even when the property damage liability limits are not sufficient to compensate for all property damage caused by the owner or operator of the vehicle." Jason paid his premiums for this insurance to " 'CSAA Insurance.' "

## 2. *The Accident and Subsequent Claims Process*

While backing out of a parking space at a mall, another vehicle rear-ended Jason's vehicle. The operator of the other vehicle refused to provide any identification or insurance information and left the scene. Jason recorded the other vehicle's license plate number, spoke with mall security personnel, and submitted an accident report to the California Department of Motor Vehicles (DMV). The report he submitted to the DMV identified "CSAA Insurance Exchange" as his insurer. The collision caused approximately $1,400 in damages to Jason's vehicle.

Jason subsequently reported the accident to CSAA. Upon receipt of the claim, CSAA attempted to identify the registered owner of the other vehicle. It also sought to obtain her insurance information, if any.

Jason thereafter received a letter from a CSAA claims representative stating CSAA had opened a claim on his policy. The letter summarized in part Jason's uninsured motorist property damage coverage and identified three conditions that must be met for the uninsured motorist property damage coverage to apply: "You are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle," "Either you or someone on your behalf reports the incident to us within 10 business days following the loss," and "The owner or operator of the uninsured vehicle is identified, or

3

the uninsured vehicle is identified by its license number." The letter also explained, "As a service to you, we will try to locate the other party's insurance information, establish a claim on your behalf and provide you with the claim information." The letter provided an address for CSAA Insurance Exchange and a "csaa.com" e-mail address for communications regarding the claim.

A claims service adjuster obtained the other driver's contact information and insurance information. He informed Jason the other driver "has been identified and has a valid insurance policy" with USAA (United Services Automobile Association). As a result, the claims service adjuster noted "Uninsured Property Damage coverage will not apply for this loss" and CSAA had "submitted a claim on your behalf."

USAA stated it was willing to accept 50 percent liability for the accident. After Jason objected to accepting any liability for the accident, the CSAA claims service adjuster informed Jason he "placed 100% Not at Fault for the accident" in his file. The claims service adjuster further explained, "Unfortunately, AAA will not be able to afford you any coverage for the loss, because you do not have any first party coverage (Collision)." He informed Jason, "[Y]ou will have to contact USAA, for any coverage that you wish to seek from [*sic*] for the damage to your vehicle," and provided Jason with the USAA claim number and the name and telephone number of the USAA adjuster. The claims service adjuster then sent a formal letter to Jason denying the claim due to the lack of collision insurance.

## B. Procedural Background

Following an initial demurrer and motion to strike, Jason filed a first amended verified complaint against AAA NCNU, CSAA Insurance Services, Inc., CSAA, Stephan G. Perrando, Valera A. Barnhart, and Jane Doe 1. The

4

amended complaint alleged nine causes of action: (1) breach of contractual duty to pay a covered claim; (2) breach of an implied obligation to good faith and fair dealing; (3) insurance bad faith for failure to properly investigate a claim; (4) unfair competition; (5) misrepresentation; (6) false promise; (7) fraud; (8) unlawful practice of law (Bus. & Prof. Code, § 6125); and (9) negligent infliction of emotional distress.

In response, CSAA Insurance Services, Inc., CSAA (the CSAA defendants), and Stephan G. Perrando filed a demurrer to the first amended complaint. They asserted the claims for breach of contract, bad faith, and failure to investigate lacked merit because Jason was not entitled to coverage for the damage to his vehicle under the terms of his insurance policy. As to the unfair competition claim, the CSAA defendants and Perrando asserted the first amended complaint failed to identify any unlawful conduct that resulted in direct harm to Jason. Similarly, they argued the claims for misrepresentation, false promise, and fraud failed to demonstrate any detrimental conduct by defendants that resulted in loss to Jason.[2] Finally, the CSAA defendants and Perrando asserted Jason failed to plead facts establishing a duty, breach, causation, or damages in connection with his negligent infliction of emotional distress claim.

The trial court granted in part the demurrer. It sustained the demurrer with leave to amend as to the unfair competition, misrepresentation, false promise, fraud, and negligent infliction of emotional distress claims, but overruled the demurrer as to the claims for breach of contract, breach of implied covenant of good faith and fair dealing, and

---

[2] The eighth cause of action for unlawful practice of law was also subject to demurrer and dismissed without leave to amend, but is irrelevant for purposes of this appeal.

5

failure to investigate. The court instructed Jason to "file a succinct, no more than thirty page second amended complaint that removes all legal arguments and only alleges, without repetition, the ultimate facts supporting the elements of each [of] his claims."

Jason subsequently filed a second amended complaint (SAC) against AAA NCNU, the CSAA defendants, Barnhart, and Jane Doe 1, realleging all of the causes of action except for the unlawful practice of law claim. Jason argued numerous references to " 'AAA Insurance' " in relevant insurance materials indicated AAA NCNU and CSAA were either related entities or jointly provided his automobile insurance. He argued his policy entitled him to recover for damages caused by a hit-and-run driver, and thus defendants breached their insurance obligations by failing to provide coverage.

While AAA NCNU answered the SAC, the CSAA defendants again filed a demurrer. The demurrer alleged the claims for unfair competition, misrepresentation, false promise, deceit, and negligent infliction of emotional distress should be dismissed because Jason failed to allege conduct supporting such causes of action.

In response to the demurrer, Jason submitted a declaration, stating "nothing has changed as to my allegations in my Second Amended Complaint as was alleged in my First Amended Complaint; except that . . . my complaint is now only 31 pages in length . . . and that I have deleted the cause of action [for the unlawful practice of law], as ordered by the court." Jason further argued the demurrer should be denied because CSAA represented he had coverage for uninsured motorists, and he believed the driver of the other vehicle, rather than the vehicle, was uninsured.

The trial court granted the demurrer without leave to amend as to the unfair competition, misrepresentation, false promise, deceit, and negligent

infliction of emotional distress claims. The court explained the SAC failed to allege facts showing CSAA engaged in unfair, dishonest, deceptive or fraudulent practices. It further noted the SAC did not adequately allege facts showing (1) who made what misrepresentations, or (2) Jason's actual and justifiable reliance on any alleged misrepresentations to his detriment and incurred resultant damages. Finally, the court explained the negligent infliction of emotional distress claim fails because bad faith, not negligence, is the sole remedy against insurers for alleged mishandling of claims.[3] The CSAA defendants subsequently filed an answer to the remaining causes of action.

AAA NCNU and the CSAA defendants each filed motions for summary judgment, or alternatively summary adjudication. The CSAA defendants first argued Jason could not demonstrate CSAA failed to pay policy benefits that were owed because the accident was not covered under the terms of the policy. Likewise, the CSAA defendants argued Jason could not prove bad faith because no liability exists when an insurer denies policy benefits due to a genuine dispute as to coverage. The CSAA defendants argued the evidence demonstrated CSAA appropriately investigated the claim, and its denial was reasonable and proper. Finally, the CSAA defendants argued CSAA Insurance Services, Inc. should be dismissed as a matter of law because it was not a party to the insurance policy.

In AAA NCNU's motion for summary judgment, it argued the first three contract-based causes of action must fail because AAA NCNU is not an insurer and was not a party to the insurance policy. Next, AAA NCNU

---

[3] On appeal, Jason does not challenge the trial court's order sustaining defendants' demurrer as to the fourth, fifth, sixth, and seventh causes of action against CSAA.

asserted Jason cannot establish his unfair competition or negligent infliction of emotional distress claims because no admissible evidence demonstrates AAA NCNU held itself out as an insurer. Similarly, AAA NCNU argued Jason could not establish claims for misrepresentation, false promise, and deceit because he failed to identify any specific misrepresentations and instead relied on unreasonable inferences from unsubstantiated evidence. AAA NCNU argued nothing in the evidence demonstrated it represented it was the insurer, and the evidence did not indicate any harm resulting from any alleged misrepresentation. Finally, AAA NCNU argued Jason failed to produce any evidence supporting his claims against AAA NCNU or demonstrate any damages as a result of AAA NCNU's conduct.

Jason opposed the motions for summary judgment. At the same time, he filed a request to dismiss with prejudice CSAA Insurance Services, Inc., which the court granted. In connection with CSAA's motion, Jason argued the insurance policy was ambiguous as to uninsured motorists, as compared to uninsured motor vehicles. Regarding this ambiguity, Jason asserted it must be interpreted against CSAA to afford him coverage. Jason then argued CSAA engaged in bad faith and caused emotional distress by not attempting to identify the driver of the other vehicle. Based on this conduct, Jason asserted he was entitled to punitive damages.

As to AAA NCNU's motion, Jason argued AAA NCNU represented it was the insurer, sold him the uninsured motorist coverage, made promises regarding its claims handling, and was obligated under the policy to provide benefits. AAA NCNU's alleged failure to do so caused Jason emotional distress. For these same reasons, Jason asserted AAA NCNU was liable for bad faith, unfair competition, misrepresentation, false promise, and deceit.

8

The trial court granted both CSAA's and AAA NCNU's motions for summary judgment. As to CSAA's motion, the trial court found the causes of action for breach of contract and implied covenant of good faith and fair dealing must fail because CSAA did not deny policy benefits owed to Jason. The court explained the evidence demonstrated no coverage was available for the accident because the other vehicle was insured by USAA. The court further held no evidence supported Jason's bad faith insurance investigation claim because the evidence demonstrated CSAA researched the owner of the other vehicle, coordinated with USAA, apprised Jason of these developments, explained to Jason the basis for denying coverage, and provided him with the necessary information to file a claim with USAA. The court found the evidence "only [gave] rise to one reasonable inference," namely, that CSAA's conduct and its denial of coverage was reasonable.

As to AAA NCNU's motion, the court noted Jason's declaration and discovery responses failed to provide specific facts to support his claims, and the exhibits demonstrated AAA NCNU held itself out as an insurance agent that "provides insurance coverage through its licensed insurer, CSAA Insurance Group." Specifically, the court noted the breach of contract, breach of implied covenant of good faith and fair dealing, and insurance bad faith claims fail because AAA NCNU, as an agent, is legally distinct from the insurer and not a party to the insurance policy. As to the claims for unfair competition, misrepresentation, false promise, and deceit, the court again noted Jason did not provide evidence showing AAA NCNU held itself out as an insurer, and the claims lacked specificity about the alleged misrepresentations. Finally, the court found the cause of action for negligent infliction of emotional distress subject to summary judgment because Jason offered no evidence to show AAA NCNU engaged in any negligent conduct or

9

was the cause of any emotional distress.  The trial court entered judgment against Jason, and he timely appealed.[4]

## II. DISCUSSION

### A.  *Standard of Review*

The standard of review for summary judgment is well established.  The motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)  We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1196.)  In performing our independent review of the evidence, "we apply the same three-step analysis as the trial court.  First, we identify the issues framed by the pleadings.  Next, we determine whether the moving party has established facts justifying judgment in its favor.  Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1438.)  Where "the facts are undisputed, the issue is one of law and the 'appellate court is free to draw its own conclusions of law from the undisputed facts.' " (*Suburban Motors, Inc. v. State Farm Mut. Auto. Ins. Co.* (1990) 218 Cal.App.3d 1354, 1359.)

We apply two separate standards of review on appeal when a demurrer is sustained without leave to amend.  "We first review the complaint de novo to determine whether the complaint alleges facts sufficient to state a cause of

---

[4] Jason dismissed defendant Valera A. Barnhart after the motions for summary judgment were granted.

action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law." (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595 (*Aguilera*).) In reviewing the complaint, we may consider any exhibits attached to the complaint as well as any matters that must or may be judicially noticed. (See *Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 400.) "Second, we determine whether the trial court abused its discretion by sustaining the demurrer without leave to amend. [Citation.] Under both standards, appellant has the burden of demonstrating that the trial court erred. [Citation.] An abuse of discretion is established when 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.' " (*Aguilera*, at p. 595.)

Additionally, we note Jason is in propria persona. A party appearing in propria persona "is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys." (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1210.) " '[T]he in propria persona litigant is held to the same restrictive rules of procedure as an attorney.' " (*Bianco v. California Highway Patrol* (1994) 24 Cal.App.4th 1113, 1125–1126.)

### B. CSAA's Motion for Summary Judgment and Demurrer

Jason argues the trial court erred by granting summary judgment as to his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and insurance bad faith. He also contends the trial court improperly granted CSAA's demurrer as to the claim for negligent infliction of emotional distress and asserts he is entitled to seek punitive damages. We disagree.

11

### 1. *Breach of Contract Claim*

Jason's breach of contract claim is based on his allegation that CSAA improperly denied him coverage under his policy's uninsured motorist provision. He does not identify any other coverage at issue. As to the uninsured motorist coverage, Jason asserts he is entitled to coverage for property damage to his vehicle caused by a collision up to $3,500, " 'for which loss or damage to the insured is legally entitled to recover from the owner or operator of an uninsured vehicle.' "

Insurance Code section 11580.26, subdivision (a)(2) generally requires insurers to provide "coverage for property damage to the insured motor vehicle . . . caused by the owner or operator of an uninsured motor vehicle" if "the policy of motor vehicle liability insurance does not include collision coverage." Subdivision (e) defines " 'uninsured motor vehicle' " as "any motor vehicle with respect to the ownership, maintenance, or use of which there is no property damage liability insurance or bond applicable at the time of the accident, or there is applicable insurance or bond but the company writing the insurance or bond denies coverage thereunder or refuses to admit coverage thereunder, except conditionally or with reservation . . . . A motor vehicle which has at least the minimum property damage liability limits required pursuant to Section 16056 of the Vehicle Code shall not be held to be an uninsured motor vehicle even when the property damage liability limits are not sufficient to compensate for all property damage caused by the owner or operator of the vehicle." (Ins. Code, § 11580.26, subd. (e).)

Jason's position is premised on the assumption he was hit by an uninsured motorist. He argues even though the owner of the other vehicle was insured, the actual driver was a different individual who was not insured. However, the uninsured motorist coverage, required by Insurance

12

Code section 11580.26, applies to an "uninsured motor vehicle." Here, the undisputed evidence demonstrates the other vehicle involved in the accident with Jason's vehicle was insured by USAA, and USAA did not deny coverage.[5] Thus, the other vehicle did not qualify as an "uninsured motor vehicle" under the terms of Jason's policy, and the uninsured motorist coverage was not applicable to the accident.

Jason next contends coverage was ambiguous because the "Declarations" page notes coverage for "Uninsured Motorists" rather than "uninsured motor vehicles." He argues the policy must be interpreted against CSAA to provide coverage for uninsured motorists—as compared to uninsured motor vehicles. Based on such an interpretation, he contends CSAA was obligated to investigate the identity of the actual driver of the vehicle and provide coverage if that driver was uninsured.

" '[I]nterpretation of an insurance policy is a question of law.' [Citation.] 'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.' [Citation.] Thus, 'the mutual intention of the parties at the time the contract is formed governs interpretation.' [Citation.] If possible, we infer this intent solely from the written provisions of the insurance policy. [Citation.] If the policy language 'is clear and explicit, it governs.' " (*Palmer v. Truck Ins. Exchange* (1999) 21 Cal.4th 1109, 1115.)

Jason's mere reliance on the Declarations page is unavailing. As to clear and conspicuous policy provisions, " ' " ' "[i]t is a general rule that the receipt of a policy and its acceptance by the insured without an objection

---

[5] CSAA affirmatively argued USAA did not deny coverage, and Jason does not contest this assertion or otherwise assert USAA's offer to accept 50 percent liability constitutes a denial of coverage. Accordingly, we assume USAA did not deny coverage for purposes of this analysis.

binds the insured as well as the insurer and *he cannot thereafter complain that he did not read it or know its terms.* It is a duty of the insured to read his policy." ' " ' " (*Mission Viejo Emergency Medical Associates v. Beta Healthcare Group* (2011) 197 Cal.App.4th 1146, 1155.) Here, the policy does not fail " 'to alert a policyholder to limitations on anticipated coverage by hiding the disfavored language in an inconspicuous portion of the policy.' " (*Haynes v. Farmers Ins. Exchange* (2004) 32 Cal.4th 1198, 1211 (*Haynes*).) Rather, the scope of the uninsured motorist coverage for property damage was fully and conspicuously set forth in "Coverage D2—Uninsured Motorists Car Damage Coverage." That section expressly states, "We will pay for loss to your insured car which you are legally entitled to recover as damages from the owner or operator of an *uninsured motor vehicle . . . .*" (Italics added.) The policy then defines " 'Uninsured Motor Vehicle' " to mean "any motor vehicle: [¶] (a) which is not insured by a property damage liability bond or policy at the time of the accident; or [¶] (b) which is insured by a property damage liability bond or policy at the time of the accident but the company denies coverage . . . ; or [¶] (c) which is used without permission of the owner if there is no property damage liability bond or policy applicable at the time of the accident. [¶] However, a motor vehicle which has at least the minimum property damage liability limits . . . shall not be held to be an uninsured motor vehicle . . . ."

Nor is such policy language " 'unusual or unfair' " such that CSAA was required to have it specifically " 'brought to the attention of the party and explained.' " (*Haynes, supra*, 32 Cal.4th at p. 1210.) Rather, the policy language tracks the requirements imposed by Insurance Code section 11580.26, subdivision (a)(2) for uninsured motorist coverage.

14

As explained above, the other vehicle does not qualify as an "uninsured motor vehicle" under the policy.  Because the "claim does not fall within the terms of [the policy's coverage] clauses, then no coverage exists."  (*Palmer v. Truck Ins. Exchange*, *supra*, 21 Cal.4th at pp. 1115–1116.)  Jason thus was not entitled to coverage and, accordingly, CSAA did not breach the insurance contract.  (*Dalrymple v. United Services Auto. Assn.* (1995) 40 Cal.App.4th 497, 512, fn. 4 [" ' "Absent an actual withholding of benefits due, there is no breach of contract" ' "].)

## 2. *Claims for Implied Covenant of Good Faith and Fair Dealing and Insurance Bad Faith*

Next, Jason asserts CSAA failed to act in good faith by refusing to investigate the identity of the other vehicle's operator.  However, as discussed in part II.B.1., *ante*, the identity of the other vehicle's operator did not impact the analysis of whether uninsured motorist coverage applied.  Rather, such coverage arises when an incident involves an "uninsured motor vehicle."  And, as further discussed above, whether the vehicle constitutes an "uninsured motor vehicle" depends entirely on the property damage liability coverage on that vehicle and whether the insurer of the other vehicle denied coverage.

Because CSAA was justified in determining the uninsured motorist coverage under Jason's policy did not apply to the accident, there was no viable basis on which CSAA could have been found to have acted in bad faith on the undisputed facts presented.  (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 36 [absent right to insurance benefits, " 'the implied covenant has nothing upon which to act as a supplement' " to an express contractual promise]; *Rios v. Scottsdale Ins. Co.* (2004) 119 Cal.App.4th 1020, 1027 [absent coverage for loss, claim of bad faith against insurer cannot be maintained].)  Accordingly, summary judgment was properly granted.

15

### 3. *Negligent Infliction of Emotional Distress Claim*

Jason challenges the trial court's order granting CSAA's demurrer without leave to amend as to his claim for negligent infliction of emotional distress. He contends CSAA's denial of his claim, and the resulting litigation instigated by Jason, caused him detriment and entitled him to damages for emotional distress.

Negligent infliction of emotional distress "is a tort in negligence." (*Moon v. Guardian Postacute Services, Inc.* (2002) 95 Cal.App.4th 1005, 1009.) " 'A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations.' " (*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group* (2006) 143 Cal.App.4th 1036, 1041.) For this reason, "negligence generally is *not* among the theories of recovery available against insurers." (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2020) ¶ 11:205.) "If an insured seeks to recover in tort for an insurer's mishandling of a claim, it must allege *more* than mere negligence." (*Adelman v. Associated Internat. Ins. Co.* (2001) 90 Cal.App.4th 352, 369.)

In support of this claim, the SAC merely restates his argument that CSAA improperly denied policy benefits. But, as discussed above, Jason's automobile policy did not provide coverage for the accident at issue. Nor does any burden Jason faced by pursing this litigation support his claim. Were we to find otherwise, every party to a lawsuit could claim emotional distress. Accordingly, the trial court properly dismissed his claim for negligent infliction of emotional distress.

Jason also fails to offer any argument as to how he could adequately amend this claim to state a cause of action. We thus conclude he failed to meet his burden of demonstrating the trial court erred in sustaining the

16

demurrer without leave to amend.  (See *Aguilera, supra*, 174 Cal.App.4th at p. 595.)

### 4. *Punitive Damages*

Jason asserts CSAA's failure to investigate his claim entitles him to punitive damages.  However, Jason has not demonstrated the trial court erred in granting CSAA's demurrer or its motion for summary judgment.  Without a valid cause of action, Jason cannot maintain a claim for punitive damages as to CSAA.  (*569 E. County Boulevard LLC v. Backcountry Against the Dump, Inc.* (2016) 6 Cal.App.5th 426, 429–430, fn. 3 ["In California, it is settled there is no separate cause of action for punitive damages."].)

## C.  *AAA NCNU's Motion for Summary Judgment*

Jason argues AAA NCNU misrepresented it was his insurer at the time he purchased his automobile insurance.  He contends this misrepresentation should result in liability against AAA NCNU under the terms of the insurance agreement, and the trial court erred by granting AAA NCNU's motion for summary judgment as to his claims for breach of contract, breach of the implied covenant of good faith and fair dealing, insurance bad faith, unfair competition, misrepresentation, false promise, deceit, and negligent infliction of emotional distress.  Jason also contends he is entitled to punitive damages.  We again disagree.

### 1. *Claims for Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, and Insurance Bad Faith*

Jason contends AAA NCNU is liable for the breach of contract, breach of the covenant of good faith and fair dealing, and insurance bad faith claims because he "believed" he was insured by AAA NCNU.  He asserts AAA NCNU represented it was the insurer for its members and thus has liability under the policy.

17

The record contains some conflicting evidence as to whether AAA NCNU represented itself as Jason's insurer. The majority of the evidence identifies CSAA as the insurer. Most notably, the policy defines the insurer as CSAA. Similarly, the annual premium payment statement states, " 'Make your check payable to CSAA Insurance,' " and the e-mails from the claims service adjuster with whom Jason corresponded bore a signature block identifying his position with "CSAA Insurance Group, a AAA Insurer." Many of the documents upon which Jason relies also state the insurance is provided by CSAA. The fact that Jason obtained his insurance, made changes to his insurance, and coordinated the appointment of a claims adjuster through AAA does not demonstrate it acted as his insurer. Jason fails to explain why such actions are not merely those of an insurance agent.

The evidence also indicates Jason knew the identity of his insurer. Most notably, the accident report Jason submitted to the DMV lists CSAA as his insurer. Likewise, in response to CSAA's separate statement of undisputed facts, Jason did not dispute he reported the accident to CSAA.

However, certain evidence in the record indicates a blending of the AAA name and CSAA. For example, correspondence and other documents related to Jason's insurance referenced "AAA Insurance." An automobile insurance pamphlet, although created by CSAA, only identifies "AAA" on the front cover and states, "Since the early 1900s, when we first began providing auto insurance as an exclusive Member service . . . ." The pamphlet also provides a single telephone number for both "Membership and Auto Insurance Services." A letter mailed to Jason encouraging online access to his insurance policy links CSAA and AAA through a website "csaa-insurance.aaa.com" and states, "If you have other auto or home insurance policies with AAA, you can link them after you sign up for MyPolicy." These

18

statements could all give a reasonable interpretation that the policy is provided by AAA NCNU.

However, whether AAA NCNU represented to Jason it was his insurer is not a material fact for these causes of action. Even assuming AAA NCNU acted as Jason's insurer, the claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and insurance bad faith must fail for the same reasons those claims against CSAA were subject to summary judgment. (See part II.B.1., 2., *ante*.)

### 2. Claims for Unfair Competition, Misrepresentation, False Promise, and Deceit

Next, Jason asserts the trial court improperly rejected his claims for unfair competition, misrepresentation, false promise, and deceit. These claims all require Jason to demonstrate he suffered harm as a result of AAA NCNU's conduct. (See, e.g., *Daniels v. Select Portfolio Servicing, Inc.* (2016) 246 Cal.App.4th 1150, 1166 [an element of a misrepresentation claim is "resulting damage"]; *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638 [resulting damage an element for deceit and false promise]; *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320–321 [private standing to bring an unfair competition claim " 'is limited to any "person who has suffered injury in fact and has lost money or property" as a result of unfair competition' "].)

Jason first relies on the same evidence discussed above to argue AAA NCNU misrepresented it was his insurer. However, Jason has not identified any harm caused as a result of such conduct. He does not contend AAA NCNU offered different terms for insurance than those provided by CSAA or identify any manner in which his "belief" that AAA NCNU was his insurer negatively impacted his insurance or insurance claim.

Jason then argues AAA NCNU misrepresented the scope of insurance provided for uninsured motorists and how it would handle any claims.

19

Specifically, he contends AAA NCNU represented it would provide a claims adjuster and work towards " 'the satisfactory resolution of your claim.' " But the undisputed evidence demonstrates a claims adjuster was assigned to Jason's claim and an investigation by CSAA was conducted. Jason acknowledged he communicated with a CSAA claims service adjuster, that adjuster contacted the other driver, obtained her insurance information, and provided Jason with claim information for the other driver's insurer. Jason does not identify any specific services AAA NCNU represented it would provide that he did not receive from CSAA.

Based on the foregoing, Jason has failed to identify any misrepresentations or unfair conduct by AAA NCNU that caused him damage. Rather, his complaint is with CSAA's refusal to pay benefits under his policy. But, as explained above, the trial court properly concluded Jason was not entitled to benefits under the terms of his policy.

### 3. *Negligent Infliction of Emotional Distress Claim and Request for Punitive Damages*

Finally, Jason asserts he is entitled to pursue his negligent infliction of emotional distress claim and request for punitive damages against AAA NCNU. However, for the same reason those claims fail as to CSAA, they also fail as to AAA NCNU. (See part II.B.3., 4., *ante*.)

## III.  DISPOSITION

The judgment is affirmed. Defendants American Automobile Association of Northern California, Nevada & Utah and CSAA Insurance Exchange may recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

20

MARGULIES, ACTING P. J.

WE CONCUR:


BANKE, J.


SANCHEZ, J.


A158369
*Jason v. American Automobile Association of Northern California, Nevada & Utah*

21